135 N.J. Super. 529 (1975)
343 A.2d 792
TOWNSHIP OF HANOVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; TOWNSHIP OF MORRIS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; BOROUGH OF FLORHAM PARK. A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; A. STEWART DUNFORD; THOMAS E. KENNEY; MARTIN B. MONROE; JOSEPH ELSMAN; JOHN E. FLAHERTY; NORMAN S. WEINBERGER, PLAINTIFFS-APPELLANTS,
v.
THE TOWN OF MORRISTOWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND THE MORRISTOWN AIRPORT COMMISSION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1975.
Decided July 30, 1975.
*530 Before Judges MICHELS, MORGAN and MILMED.
Mr. Harry L. Sears argued the cause for appellants (Messrs. Young & Sears, attorneys; Mr. Christopher H. Falcon on the brief).
*531 Mr. Edward F. Broderick, Jr., argued the cause for respondents (Messrs. Broderick & Grather, attorneys).
Mr. Walter F. Waldau argued the cause for amici curiae National Business Aircraft Association and Air Transport Association of America (Messrs. Stryker, Tams & Dill, attorneys; Mr. John J. Rizzo on the brief).
PER CURIAM.
Plaintiffs appeal from a judgment in the Chancery Division which vacated the following paragraphs of its prior judgment in this action:
C. Having determined from the evidence that the wind rose patterns at the Morristown Airport indicate that the prevailing winds favor the utilization of Runway 5-23 approximately ninety percent of the time, it is directed that after the completion of the extension of said runway, that the preferential runway at Morristown shall be 5-23. This runway shall be utilized as the preferential one by all jet aircraft landing and taking off at Morristown, except as follows:
(1) When the cross wind component on 5-23 is found to be in excess of twenty (20) knots;
(2) When an emergency landing or take-off situation exists;
(3) When the use of Runway 12-30 shall be requested and or directed by the Airport Tower personnel in the interests of flight safety. Furthermore, such preferential runway program when initiated shall be under the direction and guidance of F.A.A. control tower personnel and enforced by the management of Morristown Airport.

* * * * * * * *
I. Oral argument having been heard from counsel and a proffer of proof having been made by counsel for defendants on the subject of restricting jet aircraft at Morristown Airport during certain hours and good cause being shown therefore, the Court directs that jet aircraft will be prohibited from take-offs or landings each day between the hours of 9:00 P.M. until 7:00 A.M. and on Sundays, except during the hours of 1:00 P.M. until 3:00 P.M., unless an emergency exists, or the interests of flight safety require the utilization of the airport under the guidance and direction of the F.A.A. tower personnel.
Plaintiffs instituted this action in 1969 to enjoin the planned alteration and extension of facilities at the Morristown Municipal Airport and to curtail the use and operation of the airport. The airport is located entirely within *532 boundaries of the Township of Hanover and is owned by the Town of Morristown and operated by Morristown Airport Commission. Plaintiffs claimed, among other things, that the improvement of the Morristown Municipal Airport would violate the zoning ordinance of the Township of Hanover and that the projected use of the airport as a result of the improvements, particularly by jet-powered aircraft, would create noise and other hazards detrimental to the health, safety and welfare of the residents of the plaintiff municipalities. Judge Stamler in the Chancery Division refused to enjoin the planned alterations and extension of the facilities and permitted defendants to extend and resurface the runway designated at "5-23" and to increase the weight-bearing capacity of that runway as well as the other runway designated "12-30" and to carry out the other phases of the planned improvement of the airport. However, Judge Stamler further held that Runway 5-23, when completed, would be, with certain exceptions, the preferential runway at Morristown Municipal Airport for all jet aircraft and limited the hours that jet aircraft could land and take off. See Hanover Tp. v. Morristown, 108 N.J. Super. 461 (App. Div. 1969).
The Chancery Division retained jurisdiction of the action, declaring its judgment to be "experimental in nature" and reserving to the parties the right to apply on notice for modification of or relief from any of the provisions set forth in paragraphs (C) through (I). Approximately 2 1/2 years after entry of the judgment defendants moved before the Chancery Division for relief from the provisions of paragraphs (C) and (I). Judge Brown in the Chancery Division, relying upon the recent United States Supreme Court decision in Burbank v. Lockheed Air Terminal, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), held that the regulation of aircraft noise was preempted by the Federal Government and vacated paragraphs (C) and (I) of the prior judgment. Plaintiffs appeal.
*533 In Burbank v. Lockheed Air Terminal, supra, the United States Supreme Court found that the pervasive nature of federal regulation of aircraft noise preempted the field. The case arose when the City of Burbank adopted an ordinance which made it unlawful for (1) a jet aircraft to take off from the Hollywood Burbank Airport between 11 a.m. of one day and 7 a.m. of the next day, and (2) the operator of that airport to allow such aircraft to take off from the airport during that period. The operator of the airport and Pacific Southwest Airlines sought to enjoin its enforcement. The District Court declared the ordinance unconstitutional holding that it violated both the Supremacy Clause and the Commerce Clause. The Court of Appeals affirmed on the basis of the Supremacy Clause, finding the field of aircraft noise regulation preempted and the ordinance in conflict with runway preference orders issued by the F.A.A. Chief of Airport Traffic Control at the Hollywood-Burbank Airport. The United States Supreme Court affirmed the judgment, Justice Douglas stating:
Our prior cases on pre-emption are not precise guide-lines in the present controversy, for each case turns on the peculiarities and special features of the federal regulatory scheme in question. Cf. Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581; Huron Portland Cement Co. v. Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852, 78 ALR 2d 1294. Control of noise is of course deep seated in the police power of the States. Yet the pervasive control vested in EPA and in FAA under the 1972 Act seems to us to leave no room for local curfews or other local controls. What the ultimate remedy may be for aircraft noise which plagues many communities and tens of thousands of people is not known. The procedures under the 1972 Act are under way. In addition, the Administrator has imposed a variety of regulations relating to takeoff and landing procedures and runway preferences. The Federal Aviation Act requires a delicate balance between safety and efficiency, 49 USC § 1348(a) [49 USCS § 1348(a)], and the protection of persons on the ground. 49 USC § 1348(c) [49 USCS § 1348(c)]. Any regulations adopted by the Administrator to control noise pollution must be consistent with the "highest degree of safety." 49 USC § 1431(d) (3) [49 USCS § 1431(d) (3)]. The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional *534 objectives underlying the Federal Aviation Act are to be fulfilled.
If we were to uphold the Burbank ordinance and a significant number of municipalities followed suit, it is obvious that fractionalized control of the timing of takeoffs and landings would severely limit the flexibility of the FAA in controlling air traffic flow. The difficulties of scheduling flights to avoid congestion and the concomitant decrease in safety would be compounded. In 1960 the FAA rejected a proposed restriction on jet operations at the Los Angeles airport between 10 p.m. and 7 a.m. because such restrictions could "create critically serious problems to all air transportation patterns." 25 Fed. Reg. 1764-1765. The complete FAA statement said:
"The proposed restriction on the use of the airport by jet aircraft between the hours of 10 p.m. and 7 a.m. under certain surface wind conditions has also been reevaluated and this provision has been omitted from the rule. The practice of prohibiting the use of various airports during certain specific hours could create critically serious problems to all air transportation patterns. The network of airports throughout the United States and the constant availability of these airports are essential to the maintenance of a sound air transportation system. The continuing growth of public acceptance of aviation as a major force in passenger transportation and the increasingly significant role of commercial aviation in the nation's economy are accomplishments which cannot be inhibited if the best interest of the public is to be served. It was concluded therefore that the extent of relief from the noise problem which this provision might have achieved would not have compensated the degree of restriction it would have imposed on domestic and foreign Air Commerce."
This decision, announced in 1960, remains peculiarly within the competence of the FAA, supplemented now by the input of the EPA. We are not at liberty to diffuse the powers given by Congress to FAA and EPA by letting the States or municipalities in on the planning. If that change is to be made, Congress alone must do it. [Id., 411 U.S. at 638-640, 93 S.Ct. at 1862, 36 L.Ed.2d, 556-557.]
Thereafter in Village of Bensenville v. City of Chicago, 16 Ill. App.3d 733, 306 N.E.2d 562 (1973), the Appellate Court of Illinois, applying the Burbank decision, dismissed a suit by several municipalities which sought to enjoin the City of Chicago from expanding its facilities at O'Hare International Airport on the ground that by adding to the number and lengths of runways and supporting facilities the use of the airport would be intensified and the noise and air pollution increased, thereby creating a danger *535 to the physical and mental health of the residents of the adjoining municipalities. The court stated:
While that case involved only aircraft noise and did not include air pollution, we conclude that this is a distinction without a difference and that this decision controls our disposition of the instant case.
As a result, we conclude that the United States, under the Supremacy and Commerce clauses of the Constitution, has, through the Federal Aviation Act, as now supplemented by the Noise Control Act of 1972 and the regulations issued thereunder, so occupied the regulation of aircraft noise and air pollution as to pre-empt any state or local action in that field. * * * [306 N.E.2d at 566]
Similarly, we hold that the control and regulation of aircraft noise has been preempted by the Federal Government and that the Chancery Division infringed on the federal power when it imposed the restrictions on the use of the airport set forth in paragraphs (C) and (I) of its 1970 judgment. Those paragraphs were therefore properly vacated by Judge Brown. Cf. United States v. City of New Haven, 496 F.2d 452, 454 (2 Cir.1974), cert. den. 419 U.S. 958 (1974). See also, Virginians For Dulles v. Volpe, 344 F. Supp. 573, 577 (E.D. Va. 1972).
Furthermore, we find no merit in plaintiffs' claim that the vacation of the restrictions on the use of the airport contained in paragraphs (C) and (I) deprived them of their remedy for the alleged wrong resulting from the intolerable noise produced by the increased use of the airport without due process. Although the Federal Government has preempted the field of aircraft noise, neither plaintiff municipalities nor the individual plaintiffs are without remedies. Both can take appropriate action before the Environmental Protection Agency and the Administrator of the Federal Aeronautical Act, and the individual plaintiffs, as landowners, may in a proper case have actions at law against the Morristown Airport Commission as the operator of the airport on the theory of inverse condemnation. See Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, *536 7 L.Ed.2d 585, 588-589 (1962); Village of Bensenville v. City of Chicago, supra, 306 N.E.2d at 566.
Accordingly, the judgment in the Chancery Division vacating paragraphs (C) and (I) of its 1970 judgment is affirmed.