735 F.Supp. 937 (1990)
UNITED STATES of America, Plaintiff,
v.
CITY OF BERKELEY, Defendant.
No. 90-0746C(6).
United States District Court, E.D. Missouri.
May 3, 1990.
*938 Edwin Brzezinski, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Louis Czech, St. Louis, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on plaintiff's motion for a preliminary injunction. Having apprised the parties of its intent to do so and having obtained their consent, the Court will treat the motion as a request for permanent injunctive relief. For the reasons set forth below, the Court now grants plaintiff's motion for permanent injunctive relief.
Plaintiff, the United States of America ("the Government") seeks to enjoin the defendant City of Berkeley ("Berkeley") from interfering with the construction of an Airport Surveillance Radar-9 ("ASR-9") facility at Lambert/St. Louis International Airport on land located within the confines of the City of Berkeley. This is the sole relief sought by the Government.
An evidentiary hearing on plaintiff's motion for preliminary injunctive relief was held on April 25, 1990. The Court having considered the pleadings, testimony of witnesses, and exhibits introduced into evidence, and being fully advised in the premises, makes the following findings of fact and conclusions of law.

Findings of Fact
The Court hereby adopts the Joint Stipulation of Uncontested Facts submitted by the parties on April 24, 1990 and the amendment thereto submitted by defendant on April 25, 1990.
In addition, the Court finds that the United States, acting through the Secretary of the Department of Transportation and the Federal Aviation Administration ("FAA") has entered into a contract with K & S Associates, Inc. of St. Louis, Missouri ("K & S") for the construction of an ASR-9 facility at Lambert/St. Louis International Airport ("Airport"). The ASR-9 site is located on Brownleigh Court within the confines of the City of Berkeley on land owned by the City of St. Louis, St. Louis Airport Authority. Pursuant to a November 1989 amendment to the Master Lease between the City of St. Louis and the FAA, the Government holds a twenty-year lease on the site.
The ASR-9 radar, a state-of-the-art radar system, is part of the National Airspace System Plan designed to enhance air safety for the travelling public. The ASR-9 radar will enhance air safety by improving the ability of air traffic controllers to detect aircraft, in particular small planes, at a greater distance. In addition the ASR-9 radar will permit air traffic controllers to detect existing weather conditions and integrate this information into their direction of air traffic. There was overwhelming evidence, based upon the testimony of government witnesses, that the ASR-9 radar will greatly improve air traffic safety in the crowded skies over Lambert/St. Louis International Airport.
In the spring of 1989 the Government informed Berkeley of its plan to construct an ASR-9 facility. On at least two occasions thereafter, representatives of the FAA met with the Berkeley City Council to discuss the City's concerns about the project. FAA representatives also met or corresponded with city officials on several other occasions in order to respond to the City's questions and concerns. During this period the FAA sought but was denied a special use permit for the ASR-9 project.
The Government, acting through the FAA and the Department of Transportation, conducted two environmental assessments of the project. Each of these assessments resulted in the issuance of a Finding of No Significant Impact (FONSI). See FONSI of 5/9/89 & FONSI of 3/16/90, Govt. Exh. 5. As a result of these assessments, *939 the FAA concluded that the ASR-9 project would have a minimal to non-existent economic impact on the City of Berkeley. See FONSI of 5/9/89 at p. 2 & FONSI of 3/16/90 at p. 1. The FAA also considered the possibility of exposure to radiofrequency (RF) radiation from the ASR-9 transmitter and concluded that "[t]he only areas in the vicinity of the proposed ASR-9 that would be adversely affected by RF radiation are those within 280 feet of the antenna and in front of, or directly above, the main beam." FONSI of 3/16/90 at p. 4. The main beam is emitted from the center of the antenna at a height of 65 feet and at an angle above the horizon of 2½ degrees. Id. Thus, the main beam is located approximately 70-73 feet above ground level.
Having duly considered the possible environmental effects of the project, the Government determined that the Brownleigh Court site was the best available location for the radar. Acting pursuant to its authority under 49 U.S.C. App. § 1348(b)(1, 2 & 4), the Government then entered into a contract with K & S Associates, Inc. of St. Louis, Missouri, for the construction of the ASR-9 facility. K & S began work on the project on April 5, 1990. Thereafter on April 9, 1990, Berkeley, acting through its agents and employees, posted a stop work order at the ASR-9 site directing K & S and its subcontractors to cease work on the project pending Berkeley's issuance of a special use permit. K & S and its subcontractors complied with the order and ceased work on the project. The Government then filed this action seeking to enjoin Berkeley from interfering with the ASR-9 project.
The Government contends that it will suffer irreparable harm as a result of delay in the construction of the ASR-9 facility. The Court finds that failure to complete the facility by August 24, 1990 could delay the installation of ASR-9 radar at the Lambert/St. Louis International Airport for as much as two years. In the interim the enhanced air safety promised by the radar will be unavailable to the flying pubic. The installation of ASR-9 radar is part of a nationwide program to upgrade radar and air traffic control. The installation of these facilities at various locations is part of a coordinated nationwide project. A delay in construction at St. Louis could cause delay and a concomitant loss of air safety improvement at other locations as well.
Berkeley asserts that the site chosen for the ASR-9 project is unacceptable because of its proximity to Berkeley High School and to the proposed site of a recreational complex. Berkeley also contends that the Government has failed to consider the impact that the chosen site will have on economic development in the City. The chosen site and the parcel surrounding it are zoned M-2 and designated for planned industrial development. If the ASR-9 is constructed on the chosen site, the City fears that height restrictions applicable to structures surrounding radar facilities will discourage industrial development in the area. In addition, Berkeley objects to the FAA's failure to obtain a special use permit for the project. Although the FAA regulations governing the construction of the facility are at least as stringent as the BOCA Code, upon which the Berkeley building code is modelled, the City denied the FAA's request for a permit.
The Court will first address the application of the Berkeley building code to the ASR-9 project.

Conclusions of Law

I. The Pre-Emption Issue
Pursuant to the Supremacy clause, Congress, when acting within constitutional limits, may pre-empt state law. U.S. Const. art. VI, cl. 2; California v. ARC America Corp., ___ U.S. ___, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). For purposes of Supremacy Clause analysis, the preemption of local ordinances is treated in the same way as that of state laws. See Hillsborough County, Florida v. Automated Medical Laboratories, Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (citing City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L Ed.2d 547 (1973)).
*940 Congress' intention to supersede state law or local ordinances may be evidenced in one of three ways. California v. ARC America Corp., 109 S.Ct. at 1665. Congress may expressly state that state or local law is preempted. In addition, by virtue of pervasive federal regulation in a particular area, federal law may be said to "occupy the field." Id. (citing Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963)). Finally, state or local law is preempted when either "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).
Although the statutory provision at issue here, 49 U.S.C.App. § 1348(b), does not contain an express statement of preemption, the Court concludes that the FAA regulations governing the construction of the facility preempt Berkeley's building code. Federal regulation of airspace management, air navigation facilities and air safety is pervasive. See, e.g., City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 627, 93 S.Ct. 1854, 1856, 36 L.Ed.2d 547 (1973). The FAA has broad authority to "acquire, establish and improve air-navigation facilities wherever necessary." 49 U.S.C.App. § 1348(b)(1) (1989). Taken alone, the comprehensive federal regulation of air navigation facilities and air safety would permit the Court to conclude that local regulation of the construction of air navigation facilities is preempted.
However, in this case, Berkeley's attempt to regulate the construction of the facility also stands as an obstacle to the accomplishment of the statutory objective: the establishment and improvement of air navigation facilities for the safety of the public. See 49 U.S.C. App. § 1348(b). Where local control over federal activity obstructs the achievement of a congressional objective, local regulation is preempted. Don't Tear It Down v. Pennsylvania Ave. Dev. Corp., 642 F.2d 527, 534-35 (D.C.Cir.1980).
Pursuant to its own regulations, the FAA has made an effort to comply with the requirements imposed by the City of Berkeley. Despite the consonance between the FAA regulations governing construction of the facility and Berkeley's building code, Berkeley has refused to issue a special use permit. Congressional objectives such as enhanced air safety may not be "thwarted by local fiat." Don't Tear It Down v. Pennsylvania Ave. Dev. Corp., 642 F.2d at 634. Thus, Berkeley may not halt construction of the ASR-9 facility by demanding compliance with its building code.

II. The Propriety of Injunctive Relief
A party seeking injunctive relief must demonstrate four factors: a threat of irreparable harm; the balance of hardships between this harm and the injury that granting the injunction will inflict on other parties; a reasonable likelihood of success on the merits, and the public interest. Calvin Klein Cosmetics Corp. v. Lenox Laboratories, 815 F.2d 500, 503 (8th Cir.1987) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113-14 (8th Cir.1981) (en banc)). No single factor is dispositive; all factors must be considered to determine the ultimate balance of hardships. Calvin Klein Cosmetics, 815 F.2d at 503 (citing Dataphase, 640 F.2d at 113. When, as here, granting the injunction will give the movant substantially the relief it would obtain after a trial on the merits, the burden on the movant is heavier. Id. (Citation omitted.)
The issuance of a permanent injunction is an appropriate remedy in this case. The Government has demonstrated a threat of irreparable harm arising from delay in the construction of the ASR-9 facility. Such a delay could deprive the flying public of enhanced air safety for several years and disrupt a national program to improve air traffic control safety.
The balance of hardships in this case clearly weighs in favor of the Government. Unless the Court grants the Government's request for injunctive relief and allows the project to proceed, air safety in the crowded *941 skies over Lambert/St. Louis International Airport will suffer. Given that twenty million passengers presently use the airport in a single year, this is a weighty interest indeed. Conversely, the Court concludes that the construction of the facility at the chosen site will impose little or no hardship on the City of Berkeley. The evidence presented convinces the Court that the transmission of radio frequency waves from the facility does not pose a health or safety hazard. The Berkeley High School, which is located at least three hundred feet from the facility and well below the height of the main radar beam, will not be adversely affected by the transmission of radio frequency waves from the tower. The proposed site of the recreational complex, which is located even farther from the transmitter, also will not be affected. The Government has considered the other possible environmental effects of the ASR-9 facility and found them insignificant. The economic impact of the facility also has been considered. The possible effects on industrial development in the area of the facility are highly speculative and therefore carry little weight.
In light of the Court's conclusion that federal law preempts the application of the Berkeley building code with respect to the ASR-9 facility, the Court further concludes that the Government has demonstrated a reasonable likelihood of success on the merits. Finally, the Court concludes that the public interest in enhanced air safety will be served by the issuance of an injunction in this case.
Accordingly, the Government's request for injunctive relief will be granted, pursuant to the terms specified in the accompanying order.

ORDER AND JUDGMENT
Pursuant to the memorandum filed on this date herein, IT IS HEREBY ORDERED, ADJUDGED and DECREED that a permanent injunction shall be and it is entered herein enjoining the defendant City of Berkeley from interfering with the construction and installation of the ASR-9 radar project at Lambert/St. Louis International Airport, requiring plaintiff to pay fees and obtain permits for the project, posting notices of violations at the project site and threatening the arrest and conviction of plaintiff's contractor.