ILLINOIS BELL TELEPHONE COMPANY, d/b/a Ameritech Illinois, Plaintiff-Appellant, v. LAKE COUNTY GRADING COMPANY OF LIBERTYVILLE, INC., Defendant-Appellee.

Second District   No. 2—99—0655

Opinion filed May 1, 2000.

Edward A. Butts and Paul T. Dahlquist, both of Chicago, for appellant.

Louis W. Brydges, Sr., of Hinshaw & Culbertson, of Waukegan, for appellee.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Illinois Bell Telephone Company, d/b/a Ameritech Illinois, appeals from the judgment of the circuit court of McHenry County dismissing count I of its second amended complaint for injunctive relief brought against defendant, Lake County Grading Company of Libertyville, Inc. Pursuant to section 13 of the Illinois Underground Utility Facilities Damage Prevention Act (220 ILCS 50/13 (West 1996)),

plaintiff had sought a preliminary and permanent injunction requiring defendant to modify its work practices.

Count I of plaintiff's second amended complaint alleged as follows. Plaintiff, an Illinois telecommunications carrier engaged in providing telecommunications services in McHenry County and other parts of the state, provides services that are essential to the health, welfare, and economic well-being of its customers in the communities it serves. In doing so, plaintiff relies heavily upon underground distribution facilities located in public rights-of-way, dedicated easements, or private property pursuant to permission. When such facilities are cut, damaged, or destroyed by those engaged in excavation or demolition activities, "vital public services are disrupted and public safety may be impaired until emergency and permanent repairs can be made." Defendant is engaged in excavation and underground construction.

To prevent damage to underground utility, telecommunications, and cable TV facilities, the legislature enacted the Underground Utility Facilities Damage Prevention Act (Act). The Act established the respective legal duties, responsibilities, and liabilities of public utilities, telecommunication carriers, and cable TV companies (underground utility facilities), on the one hand, and excavators and contractors, on the other hand. Pursuant to section 4 of the Act (220 ILCS 50/4 (West 1996)), the duties and responsibilities of any person engaged in excavation or demolition were to take reasonable actions to identify the exact location of underground utility facilities by hand digging or other means; to plan the excavation or demolition so as to avoid damaging such facilities; to call the "State-Wide One-Call Notice System" not less than 48 hours or more than 14 days before commencing work so as to allow the underground utility facilities to mark the approximate locations of such facilities; to provide support for the underground utility facilities during the excavation or demolition; and to properly backfill its excavation with such materials as are necessary to avoid damage to the underground utility facilities.

Plaintiff alleged that on 21 separate occasions over the past 4 years defendant had violated its duties under the Act by engaging in "a pattern of careless and negligent conduct," which had resulted in damage to plaintiff's underground utility facilities and in the interruption of telecommunications services to the public. Plaintiff listed the specific occasions on which defendant had damaged its underground utility facilities. Plaintiff provided the date and location of the damage, the type of damage to the facility, the manner in which the damage occurred, the statutory violation committed by defendant's conduct, and the cost of repairing the damage. Plaintiff alleged that, unless defendant was enjoined pursuant to section 13 of the Act, a

continuing likelihood existed that defendant would damage plaintiff's underground utility facilities in the course of its ongoing excavation and underground construction activities in "McHenry County and surrounding counties." Plaintiff further alleged that recurrent damage to its facilities inconvenienced the public by interrupting telephone service, potentially impaired E-9-1-1 and other emergency and alarm services, disrupted economic activity, impaired plaintiff's reputation for reliable service, and caused economic harm to plaintiff through immeasurable lost revenues from failed telecommunications. According to plaintiff, although the repair costs for the facilities damaged by defendant had been paid or compromised, except as noted in counts II through X of the complaint, liability for plaintiff's damages had proved to be an insufficient deterrent to defendant's careless and negligent conduct.

Under section 13 of the Act plaintiff sought relief in the form of a preliminary and permanent injunction requiring defendant to modify its work practices so as to bring it into compliance with the requirements of the Act. In particular, plaintiff asked that defendant be compelled to (a) refrain from excavating with a backhoe, bulldozer, grader, jackhammer, auger, directional bore, or similar equipment within 18 inches of plaintiff's underground utility facilities; (b) expose, by hand digging or the use of compressed air agitator and vacuum technology, and protect plaintiff's underground utility facilities located within 18 inches of defendant's excavation or underground construction activities; (c) provide vertical and lateral support, when needed, to those underground utility facilities exposed during and after defendant's excavation and underground construction activities; (d) backfill all excavations in a manner that will protect and support plaintiff's underground utility facilities; and (e) notify plaintiff within one hour of any damage by defendant's work to plaintiff's underground utility facilities.

Pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), defendant filed a motion to dismiss count I of plaintiff's second amended complaint. Defendant asserted that plaintiff's allegations were insufficient to support the relief requested because the Act specifically provided for the award of monetary damages and fines as a remedy for any damage to plaintiff's underground utility facilities resulting from ongoing excavation. Additionally, defendant maintained that section 13 of the Act did not provide for ongoing injunctive relief but was intended to apply to "specific, identified sites."

Defendant also asserted that plaintiff had made no showing that the public safety or preservation of uninterrupted necessary utility

services was endangered by any "prospective" act by defendant or that defendant was proposing to engage in specific excavation in a negligent or unsafe manner that would result in damage to plaintiff's underground utility facilities. Additionally, defendant asserted that the fact that plaintiff's facilities had been damaged 21 times over 4 years was not *per se* evidence that defendant's excavation work was or would be performed in a negligent or unsafe manner. Also, defendant maintained that plaintiff had not set forth facts disclosing that defendant had failed to perform in the manner plaintiff was asking the court to compel defendant to perform.

Defendant asserted further that for the court to grant injunctive relief it would have to assume that on every job defendant would excavate in a negligent or unsafe manner, that there would be damage to plaintiff's facilities, that the damage would be the result of defendant's negligent and unsafe excavation and not from any incorrect information provided by plaintiff or from some unrelated cause, that public safety or the preservation of uninterrupted necessary utility services would be endangered by defendant's conduct, and that defendant was proposing to use excavation procedures that were likely to damage plaintiff's underground utility facilities.

Plaintiff filed a response to defendant's motion to dismiss alleging that count I of plaintiff's second amended complaint pleaded the specific elements of a cause of action for injunctive relief under section 13 of the Act. Plaintiff alleged further that, although the Act contained a provision that provided money damages to plaintiff for damage to its facilities, it was the injury to the public and not the damage to plaintiff that supported the grant of injunctive relief under section 13.

Plaintiff also maintained that injunctive relief under section 13 was not limited to specific, identified jobsites and that such a conclusion was nonsensical because it would effectively "gut" section 13 and defeat its remedial purpose. According to plaintiff, it had no advance knowledge of where defendant planned to perform work or what equipment or work practices it intended to employ. Furthermore, section 13 required plaintiff to allege only that defendant's conduct "is likely to result" in damage to plaintiff's underground utility facilities.

Without setting forth any basis for its ruling, the trial court dismissed count I of plaintiff's second amended complaint. This appeal ensued.

■ A trial court should not dismiss a complaint under section 2—615 unless it clearly appears that plaintiff can prove no set of facts under the pleadings which would entitle it to the relief sought. *Green v. Chicago Tribune Co.*, 286 Ill. App. 3d 1, 4-5 (1996). In reviewing the trial court's order on a motion to dismiss, this court applies a *de novo*

standard of review. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997).

■ On appeal, plaintiff contends that, pursuant to section 13 of the Act, it set forth a cause of action for injunctive relief and, therefore, the trial court should not have dismissed count I of its complaint. Preliminarily, we note that where a statute expressly authorizes injunctive relief, a plaintiff need only show defendant's violation of the Act and that plaintiff has standing to pursue the cause. *People v. Fiorini*, 143 Ill. 2d 318, 346 (1991); *People v. Staunton Landfill, Inc.*, 245 Ill. App. 3d 757, 768 (1993). The general rules of equity requiring a showing of irreparable injury and a lack of an adequate remedy at law need not be shown. *Fiorini*, 143 Ill. 2d at 346; *Staunton Landfill*, 245 Ill. App. 3d at 768.

■ The issue before us constitutes a question of statutory interpretation. Section 13 of the Act states:

"Where public safety or the preservation of uninterrupted, necessary utility service or community antenna television system service is endangered by any person engaging in excavation or demolition in a negligent or unsafe manner which has resulted in or is likely to result in damage to underground utility facilities or CATS facilities, or is proposing to use procedures for excavation or demolition which are likely to result in damage to underground utility facilities or CATS facilities, the owner or operator of such facilities may commence an action, or the State's Attorney, at the request of the owner or operator of such facilities or the Illinois Commerce Commission, shall commence an action, in the circuit court for the county in which the excavation or demolition is occurring or is to occur, or in which the person complained of has his principal place of business or resides, for the purpose of having such negligent or unsafe excavation or demolition stopped and prevented, either by mandamus or injunction." 220 ILCS 50/13 (West 1996).

■ In construing a statute our goal is to ascertain and give effect to the intent of the legislature. *Northern Illinois Gas Co. v. R.W. Dunteman Co.*, 301 Ill. App. 3d 689, 693 (1998). The best evidence of legislative intent is the language of the statute itself. *Northern Illinois Gas*, 301 Ill. App. 3d at 693. No statute may be construed more broadly than its express language and reasonable implications; however, what is implied in a statute is as much a part of it as what is expressed. *Baker v. Miller*, 159 Ill. 2d 249, 260 (1994). An issue of statutory construction is subject to *de novo* review on appeal. *Northern Illinois Gas*, 301 Ill. App. 3d at 693.

In its complaint plaintiff acknowledged that it had asserted claims against defendant to recover the costs of repairing past damages resulting from defendant's alleged careless and negligent conduct and that,

except for the incidents noted in counts II through X of its second amended complaint, the claims had been "paid or compromised." Nonetheless, plaintiff alleged, liability for its damages had proved to be an insufficient deterrent to defendant's careless and negligent conduct. Consequently, based on defendant's past careless and negligent conduct, plaintiff sought injunctive relief to prevent any future damage to its underground utility facilities in "McHenry County and surrounding counties" resulting from such conduct.

Defendant maintained in its motion to dismiss, as it does here, that section 13 of the Act does not provide for ongoing injunctive relief but is intended to apply only to specific, identified excavation sites. Additionally, defendant asserted, the issuance of a preliminary and permanent injunction, as prayed for by plaintiff, would require constant supervision by the court.

■ To support its argument that the legislature intended that section 13 apply only to specific, identified sites defendant relies on language in the provision that states that an action may be commenced *"in the circuit court for the county in which the excavation or demolition is occurring or is to occur."* (Emphasis added.) 220 ILCS 50/13 (West 1996). Defendant fails to cite the language that immediately follows this portion of the provision, *i.e., "or in which the person complained of has his principal place of business or resides."* (Emphasis added.) 220 ILCS 50/13 (West 1996). We agree with plaintiff that the foregoing italicized portions merely constitute a traditional venue provision, limiting only where an action may be filed and not the substantive relief that may be granted once venue is established.

We believe that if the legislature had intended injunctive relief to be limited only to specific jobsites that were identified in advance, as defendant contends, it would have included such language in section 13. The very scheme of the Act belies defendant's position. Section 4 of the Act establishes the standards of conduct excavators must follow at every work site to prevent damage to underground utility facilities. 220 ILCS 50/4 (West 1996). Section 9 provides that, if an excavator fails to comply with these standards and damages result, he is guilty of *prima facie* negligence. 220 ILCS 50/9 (West 1996). Given the fact that the Act prohibits at any jobsite the conduct that plaintiff sought to enjoin, we concur with plaintiff's position that it is illogical to assume that the legislature intended that the court's authority to enter an injunction is limited solely to specific jobsites. Defendant's limitation would place a nearly impossible burden upon plaintiff because it would require plaintiff to identify, in advance, the work sites where defendant would commit its negligent and unsafe excavation practices. In some instances, as illustrated by the facts alleged in plaintiff's com-

plaint, a utility could have no knowledge of a defendant's work site until after damage occurred to its underground facility. Here, on at least four occasions, as set forth in the complaint, defendant failed to notify plaintiff that it was going to dig at a specific site, and damage resulted. Under these circumstances, it would have been impossible for plaintiff to have filed a timely suit seeking an injunction to prevent defendant from excavating at those sites because plaintiff would not have known defendant's location until after defendant damaged plaintiff's underground cable.

Defendant also contends that the legislature could not have intended that section 13 provide injunctive relief for future work at unidentified sites because such an interpretation would require constant supervision by the court. Defendant asserts that the court would be placed in the position of having to approve defendant's plans or procedures of excavation for each and every job, anywhere, or of judging the propriety of those plans or procedures after the completion of the excavation work. Defendant ignores the obvious, *i.e.*, that the court would not be placed in this position if defendant complied with the constraints of the Act and did not violate the injunction.

Defendant maintains that by requesting injunctive relief plaintiff is attempting to prohibit defendant from all types of conduct, forever, and that such relief would interfere with its legitimate business interests. Plaintiff responds that it is not trying to put defendant out of business but is trying only to require defendant to do what the statute directs it to do, *i.e.*, to employ work procedures that comply with the Act. It does not appear to us that seeking relief that will ensure defendant's compliance with the standards set forth in the Act is such an onerous request. At any rate, defendant will have an opportunity at a trial on the merits to present evidence on the issue of whether the specific injunctive relief plaintiff is requesting in its complaint is appropriate. Defendant's argument that plaintiff's request is so burdensome that it will put defendant out of business is not germane to whether plaintiff's complaint stated a cause of action.

In reviewing the propriety of a dismissal for the failure to state a cause of action, this court must decide whether the complaint alleged sufficient facts to establish a cause of action upon which relief could be granted. *Zielinski v. Miller*, 277 Ill. App. 3d 735, 739 (1995). Here, where we have concluded that the injunctive relief provided in section 13 of the Act is not limited only to specific, identified sites, and where plaintiff pleaded sufficient facts to allege that defendant was engaging in negligent and unsafe work practices in violation of the Act, we find that count I of plaintiff's second amended complaint stated a cause of action upon which relief may be granted.

Accordingly, we reverse the judgment of the circuit court of McHenry County dismissing count I of plaintiff's complaint seeking injunctive relief and remand the cause for further proceedings.

Reversed and remanded.

McLAREN and GALASSO, JJ., concur.