No. 2--00--1232

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE 
ex rel.
    ) Appeal from the Circuit Court

JOSEPH E. BIRKETT, STATE'S   ) of Du Page County.

ATTORNEY OF DUPAGE COUNTY; )

THE COUNTY OF DUPAGE; THE     )

VILLAGE OF BENSENVILLE; THE )

CITY OF ELMHURST; and THE )

CITY OF WOOD DALE,            )

                              )

Plaintiffs-Appellants,   )

                              )

v.                            ) No. 95--CH--0748     

                              )          

THE CITY OF CHICAGO,          ) 

                              )                  

     Defendant-Appellee       )

                              )

(Henry J. Hyde and James      ) Honorable

"Pate" Philip, Intervening    ) Bonnie M. Wheaton,

Plaintiffs-Appellants).       ) Judge, Presiding.           _________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:
 

Plaintiffs, the People of the State of Illinois, Joseph E. Birkett, State's Attorney of Du Page County, County of Du Page, the Village of Bensenville, the City of Elmhurst, and the City of Wood Dale, 
appeal the trial court's granting of the motion for summary judgment
 of defendant, the City of Chicago (the City), and the court's denial of plaintiffs' motion for partial summary judgment and injunction.  Plaintiffs-intervenors, Henry J. Hyde and James "Pate" Philip, appeal the trial court's dismissal for lack of standing.  We affirm in part, reverse in part, and remand the cause for further proceedings.

The following is a summary of the vast number of documents contained in the record.  In 1975 or 1976 the City undertook a "Master Plan Study" to determine the future forecast needs for O'Hare International Airport. In 1993 the City and the airlines undertook a "Master Plan Update," later called the "ALP Update," to develop a 20-year, long-term master plan for O’Hare.  In 1993 the City and its advisers concluded that air traffic demand would require a new quad runway system at O'Hare or a third airport.  In April 1995, the City directed its public relations firms to "gain widespread support for runway expansion at O’Hare."

In 1996 the City commissioned another long-term plan, eventually called the "Integrated Airport Plan."  In 1997 Landrum and Brown, a leading airport consultant firm, presented its long-term global "Hub Feasibility Study" to a representative of the City.  The study handled forecasted traffic and recommended a reconfiguration of the current intersecting runway system to a parallel quad runway system, adding two new runways.  Other studies also concluded that O'Hare would run out of capacity and would require additional runways by the year 2007.  The studies concluded that terminals were sufficient to handle the current traffic and that new terminals would be needed only
 if new runways were built to accommodate more traffic.  

After completing a study of the long-term needs at O'Hare, in 1998 an airline consultant recommended that the City adopt a four-phase "Integrated Airport Plan."  The first three phases included terminal and roadway construction and the capital improvement program.  The fourth phase included a new quad runway system.

In February 1999, Chicago's Mayor Richard M. Daley announced the "World Gateway Project," including new terminal construction and roadway expansion.  The announcement did not contain information about new runways.  In March 2000, an airline consultant, Booz-Allen, concluded that O'Hare is currently out of capacity and needs new runways.  The City announced that it did not intend to apply for a certificate from the Illinois Department of Transportation (IDOT) regarding the "World Gateway Project."

On December 22, 1995, plaintiffs filed a two-count amended complaint against the City.  Count I, an action in 
quo warranto
, sought declaratory and injunctive relief, alleging that, without an IDOT certificate,
 the City's past and future planned construction at O'Hare was unlawful.  Count I alleged that "flights to and from O'Hare Airport create severe noise, air pollution and safety concerns" among the citizens of Bensenville, Elmhurst, and Wood Dale.  Count I sought a declaration that the City's actions were without authority and requested an order prohibiting the City from constructing current and proposed development without obtaining an IDOT certificate of approval.  Count II sought an injunction and was brought directly under the Illinois Aeronautics Act (Aeronautics Act) (620 ILCS 5/1 
et seq.
 (West 1998)).  Count II alleged that the City had in the past continued to undertake piecemeal expansion without seeking the approval of IDOT.  Count II sought an order enjoining the City from continuing its current and proposed construction at O'Hare without first obtaining IDOT's approval. 

On January 5, 1996, the City filed a motion for transfer of venue.  The trial court denied the motion.  Subsequently, the City filed a motion to dismiss plaintiffs' complaint, claiming that plaintiffs lacked standing because the Aeronautics Act was not intended to protect the interests of the citizens of Bensenville, Elmhurst, Wood Dale, and unincorporated Du Page County from noise and air pollution caused by O'Hare activity.  On August 16, 1996, the trial court denied the City's motion to dismiss, ruling that plaintiffs did have an implied cause of action under the Aeronautics Act.

In December 1996, the trial court granted United States Representative Henry J. Hyde and Illinois State Senator Pate Philip leave to intervene as plaintiffs.  

The trial court ordered the City to allow plaintiffs to review documents the City claimed to be privileged and held the City in contempt for the failure to produce documents related to plans and discussions regarding O'Hare construction.  On appeal, this court held that the documents were not privileged, but it vacated the part of the contempt order imposing a fine on the City. 
People ex rel. Birkett v. City of Chicago
, 292 Ill. App. 3d 745, 755-56 (1997), 
aff’d
, 184 Ill. 2d 521 (1998).  The City completed the document production by late in 1999.

On June 8, 2000, the City filed a motion for summary judgment. Plaintiffs filed a cross-motion for partial summary judgment and a preliminary injunction requesting the court to enjoin the City from the construction of the "World Gateway Project" and capital improvement project. 

On September 26, 2000, after hearing argument and reviewing the parties' briefs, the trial court granted summary judgment in the City's favor and denied plaintiffs' motion for partial summary judgment and a preliminary injunction.  The trial court found that there was a latent ambiguity in the statute regarding the phrase "alteration or extension of an existing airport."  620 ILCS 5/47 (West 1998).  After considering the statute as a whole and IDOT regulation 14.640 (92 Ill. Adm. Code §14.640 (1998)), the trial court concluded that the Act was concerned only with aeronautics safety and that the City did not need to obtain an IDOT certificate of approval for its planned project.  The court also found that the Du Page County State’s Attorney and the municipal plaintiffs had standing but that Philip and Hyde lacked standing and dismissed them from the action.  The court did not rule on federal preemption or home rule issues raised  by the City.  Plaintiffs filed this timely appeal.  The Chicagoland Chamber of Commerce filed an amicus brief.

On appeal, plaintiffs argue that the trial court erred by granting summary judgment in the City's favor.  

A court should enter summary judgment if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  
Jones v. Chicago HMO Ltd. of Illinois
, 191 Ill. 2d 278, 291 (2000).  A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might
 
differ in drawing inferences from those facts.  
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 31 (1999).  When evaluating the facts, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party.  
Dowd & Dowd, Ltd. v. Gleason
, 181 Ill. 2d 460, 483 (1998).  We
 
apply a 
de novo
 standard of review to the trial court's decision to
 
grant summary judgment.  
Jones
, 191 Ill. 2d at 291.
 

Plaintiffs argue in particular that the trial court erred by finding that the City's plans for O'Hare do not require IDOT's approval because the plans do not constitute "any alteration" within the meaning of section 47 of the Aeronautics Act.  

Section 47 of the Aeronautics Act provides:

"It shall be unlawful for any municipality or other political subdivision, or officer or employee thereof, or for any person, to make any alteration or extension of an existing airport or restricted landing area, or to use or operate any airport or restricted landing area, for which a certificate of approval has not been issued by the Department [IDOT] ***."  620 ILCS 5/47 (1998).

In interpreting statutory language, we must give effect to the intent of the legislature.  
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503-04 (2000).  The best indication of the legislature's intent is the language of the statute in question.  
Michigan Avenue National Bank
, 191 Ill. 2d at 504.  Thus, we will give clear and unambiguous terms their plain and ordinary meaning.  
Michigan Avenue National Bank
, 191 Ill. 2d at 504.  However, if the words of a statute are ambiguous, we may look beyond the language and resort to aids for construction.  
People v. Whitney
, 
188 Ill. 2d 91, 98 (1999).  A statute is ambiguous if it is capable of more than one reasonable interpretation.  
Paciga v. Property Tax Appeal Board
, 322 Ill. App. 3d 157, 161 (2001).  While we are not bound by an administrative agency's interpretation of a statute, we may accord substantial deference to an agency's interpretation.  
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 398 (1994).  When an agency is charged with the administration and enforcement of a statute, the agency is in a good position to make informed judgments upon the issues, based on its experience and expertise.  See 
Bonaguro
, 158 Ill. 2d at 398.  We review a decision regarding the interpretation of a statute 
de novo
.  
Paciga
, 322 Ill. App. 3d at 161.

Plaintiffs argue that the language "any alteration" is unambiguous and that its plain and ordinary meaning includes the City's $5 to $6 billion O'Hare expansion project. The City argues that the term "any alteration" is ambiguous because applying its plain meaning would require an IDOT certificate for every insignificant change at O'Hare.  

We agree with the City that the term "any alteration," when viewed in context with the entire statute, is ambiguous.  The statute provides no guidance or language narrowing the plain meaning of the term.  Plaintiffs acknowledge that section 47 could not plausibly require certificates for every minor change.  Because the statute provides no guidance as to the meaning of the term "any alteration," and applying the term's plain and ordinary meaning would lead to absurd results, we must look beyond the statutory language to aid us in interpreting the term.

An IDOT regulation provides:

"The phrase, 'alteration or extension', shall include any of the following:

(a) Any material change in the length, width or direction of runways or landing strips;

(b) Construction or installation of any building or other structure on the airport property which would extend above an approach slope or a transition slope or turning zone;

(c) Planting or permitting to grow any growth or placement of any other obstacle on the airport property which would extend above an approach slope or a transition slope or turning zone."  92 Ill. Adm. Code §14.640 (1998).

Plaintiffs argue that this regulation interferes with the legislative intent by improperly limiting the scope of section 47 of the Aeronautics Act.  We understand that we must not accord deference to an agency's interpretation of a statute if its interpretation is plainly erroneous or contrary to the clear language of the provision.  See 
Marion Hospital Corp. v. Illinois Health Facilities Planning Board
, 324 Ill. App. 3d 451, 456 (2001).  However, it is well settled that, when a statute remains unaltered through successive sessions of the General Assembly over a period of years, this inaction indicates legislative acquiescence to an agency's continuous interpretation.  
Southwestern Bell Mobile Systems, Inc. v. Department of Revenue
, 314 Ill. App. 3d 583, 589 (2000). 

Here, the City has a long history of significant development at O'Hare without IDOT approval under section 47.  For example, the City added three new hold pads, the terminal 5 apron, additional aircraft fueling tanks, two new full-sized terminals, concourse areas, and upper and lower roadways.  Further, Du Page County Airport constructed new terminals without seeking IDOT approval.  Yet, the legislature has never amended the Aeronautics Act to expressly include such significant projects.  In fact, the legislature had a bill before it, introduced in March 1995, that would have amended section 47 by requiring a certificate for all physical improvements at public airports that could expand airport capacity.  89th Ill. Gen. Assem., Senate Bill 1124, 1995 Sess. (introduced March 7, 1995).  However, the legislature did not enact the bill.  In light of this history, we determine that the legislature acquiesced in IDOT's administrative interpretation of section 47 of the Aeronautics Act.  See 
In re Illinois Bell Switching Station Litigation
, 161 Ill. 2d 233, 253 (1994). 

Plaintiffs argue that, even applying IDOT's limitation of section 47, there is a genuine issue of material fact that should have precluded summary judgment in the City's favor.  Plaintiffs argue that there was ample material evidence that the City's plans include the building of additional runways.  We agree with plaintiffs.  

The record includes exhibits that support plaintiffs' claim that the "World Gateway Project" is part of a larger plan that includes the construction of additional runways.  The City's advisers concluded that air traffic demand would require additional runways.  The City's public relations firm was hired to win support for runway expansion at O’Hare.  Studies commissioned by the City and airlines have concluded that O'Hare is currently out of runway capacity or will be by 2007 and that O'Hare does not need new terminals without additional runways.  Documents support the plaintiffs' allegation that the City devised a four-part master
 plan that included new runways but announced only part of that plan, calling it the "World Gateway Project," without disclosing its intention to reconfigure and construct new runways.  It is well established that municipalities cannot evade statutory requirements by segmenting an overall project into smaller pieces.  See 
In re Petition of the Village of Kildeer to Annex Certain Property
, 162 Ill. App. 3d 262, 277, 281 (1987); 
Herrington v. County of Peoria
, 11 Ill. App. 3d 7, 13 (1973).  The documents presented by plaintiffs create a genuine issue of material fact as to whether the City's plans require it to obtain an IDOT certificate under section 47 of the Aeronautics Act.  Therefore, the trial court's decision to grant summary judgment in the City's favor was erroneous.

Plaintiffs also argue that the trial court erred by failing to grant injunctive relief.  Plaintiffs argue that they are entitled to preliminary and mandatory injunctive relief by showing only a violation of a statute without demonstrating that the traditional equitable factors weigh in their favor.  We disagree.

Ordinarily to obtain a mandatory injunction, a plaintiff must establish the existence of a lawful right, the lack of an adequate remedy at law, and that he will suffer irreparable harm in the absence of the injunction.  
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 234-35 (1999).  To obtain a preliminary injunction, a plaintiff must demonstrate a clear and certain right that needs to be protected, irreparable harm, no adequate remedy at law, and a likelihood of success on the merits.  
County of Cook v. Village of Rosemont
, 293 Ill. App. 3d 713, 717 (1997).  However,
 
where a statute expressly authorizes
 
injunctive relief, a plaintiff need show only
 defendant's violation of the Act and that plaintiff has standing to pursue the cause.  The general rules of equity requiring a showing of irreparable injury and a lack of an adequate remedy at law need not be shown.  
Illinois Bell Telephone Co. v. Lake County Grading Co. of Libertyville, Inc.
, 313 Ill. App. 3d 184, 189 (2000).

The Aeronautics Act provides "plaintiffs" with the right to seek an injunction.  620 ILCS 5/79a (West 1998).  Thus, plaintiffs here need establish only
 standing
 and
 a violation of the Act.  However, at this juncture in the case, plaintiffs have not yet established a violation of the Act.  At best, plaintiffs have established only a genuine issue of material fact as to whether the City has violated or plans to violate the Act.  Thus, this issue must be heard and decided by the trial court upon remand.

As an alternative reason to affirm the judgment, the City argues that the plaintiffs’ claim is preempted by federal law.  The City asserts that certain federal acts comprise comprehensive legislation that precludes state or local governments from regulating air traffic flow, including efforts to abate noise and air pollution.

The supremacy clause of the Constitution provides that "the Laws of the United States *** shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."   U.S. Const., art. VI, cl. 2.  Pursuant to the supremacy clause, federal law preempts state law when (1) Congress expressly preempts state law; (2) Congress occupies the entire field (field preemption); and (3) there is an actual conflict between federal and state law (conflict preemption).  
Sprietsma v. Mercury Marine, a Division of Brunswick Corp.
, 312 Ill. App. 3d 1040, 1044 (2000), citing 
English v. General Electric Co.
, 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 74-75, 110 S. Ct. 2270, 2275 (1990).  When interpreting a federal statute pertaining to a subject traditionally governed by state law, a court must be reluctant to find preemption.  
CSX Transportation, Inc. v. Easterwood
, 507 U.S. 658, 663-64, 123 L. Ed. 2d 387, 396, 113 S. Ct. 1732, 1737 (1993); 
Weiland v. Telectronics Pacing Systems, Inc.
, 188 Ill. 2d 415, 417 (1999).

Here, the City argues the Federal Aviation Act (FAA) (49 U.S.C. §40103(a)(1), (b)(1) (1994)), the Noise Control Act (49 U.S.C. §§44715(a)(1)(B) 
(1994)), and the Airport and Airway Improvement Act (AAIA) (49 U.S.C. §17101 
et seq.
 (1994)) occupy the entire field of air traffic flow and thus IDOT's certification requirement attempts to regulate the same subject addressed by these federal acts.

The Federal Aviation Act provides in part that the federal government "has exclusive sovereignty of airspace of the United States."  49 U.S.C. §40103(a)(1) (1994).  The FAA authorizes extensive regulation regarding the operation of aircraft and the use of navigable airspace.  49 U.S.C. §40103(b)(1) (1994).  Thus, the FAA preempts local ordinances that purport to do the same.  For example, in 
Price v. Charter Township
, 909 F. Supp. 498 (E.D. Mich. 1995), the court struck down a local ordinance that limited frequency of flights, holding, in part, that it was preempted by the FAA.  However, generally, the statute does not preempt state and local ordinances that regulate land use without directly regulating the flight operations of aircraft in navigable airspace.  For example, in  
City of Cleveland v. City of Brook Park
, 893 F. Supp. 742, 750-51 (N.D. Ohio 1995), the District Court of the Northern District of Ohio upheld a local ordinance that required the approval for the construction of runways, holding that it was not preempted by the FAA because it did not directly regulate the flight operations of aircraft.  Further, the FAA’s policy statement regarding noise mitigation measures states:

"Public controls on the use of land are commonly exercised by zoning.  Zoning is a power reserved to the states under the U.S. Constitution. It is an exercise of the police powers of the states that designates the uses permitted on each parcel of land."  60 Fed. Reg. 14701 (March 20, 1995) (regarding 14 C.F.R. Part 150).

The Illinois statute at issue in this case, as limited by the IDOT regulation, does not attempt to regulate the operation and use of navigable airspace.  In this instance, the statute requires IDOT's approval only for "[a]ny material change in the length, width or direction of runways or landing strips."  92 Adm. Code §14.640 (1998).  While the alteration or construction of runways may have a tangential effect on the operation of aircraft and the use of navigable airspace, it is not substantial.  Thus, section 47 of the Aeronautics Act as applicable in this case is not preempted by the Federal Aviation Act. 

We recognize that our holding is not supported by the holding in 
Burbank-Glendale-Pasadena Airport Authority v. City of Los Angeles
, 979 F.2d 1338 (9th
 Cir. 1992) (court struck down local regulation of taxiways and runways as preempted by the FAA, holding that it interferes with the movement and operation of aircraft).  However, we decline to follow the Ninth Circuit's reasoning because its analysis was incomplete; it prohibits local governments from regulating land use, a subject traditionally left to state and local authorities; and it is inconsistent with our duty to decline to find preemption absent the clear and manifest intent of Congress.  See 
Isbell v. Union Pacific R.R. Co.
, 318 Ill. App. 3d 1011, 1020 (2001).

The Noise Control Act authorizes the FAA in conjunction with the Environmental Protection Agency to control and abate aircraft noise.  49 U.S.C. §44715(a)(1)(B) (1994).  This statute occupies the field of regulations regarding the flight operation of aircraft in navigable airspace as it affects noise levels.  See, 
e.g.
, 
City of Cleveland
, 893 F. Supp. at 751-52.  For example, in 
City of Burbank v. Lockheed Air Terminal, Inc.
, 411 U.S. 624, 36 L. Ed. 2d 547, 93 S. Ct. 1854 
(1973), the United States Supreme Court struck down a local ordinance that imposed a curfew on takeoffs to control noise, holding that it was preempted by, 
inter alia
, the Noise Control
 
Act.  However, the statute does not preempt state and local ordinances that do not regulate the use of aircraft in navigable airspace.  For example, in 
City of Cleveland
, the District Court of the Northern District of Ohio upheld an ordinance that required a special use permit for the construction of additional runways, holding that it was not preempted by the Noise Control Act.  
City of Cleveland
, 893 F. Supp. at 751-52; see also 
Faux-Burhans v. County Commissioners
, 674 F. Supp. 1172 (D. Md. 1987), 
aff'd
, 859 F.2d 149 (4th
 Cir. 1988) (the court upheld a local ordinance regulating take-off distance, setbacks, types of flights, and intensity of airport use, holding that it was not
 
preempted by the Noise Control Act).

The Illinois Aeronautics Act does not attempt to regulate aircraft; it does not attempt to impose a curfew or maximum noise
 
levels.  In fact it does not impose any requirements on aircraft.  Rather, it permits the State of Illinois, through IDOT, to consider noise levels in the placement of runways in its land use decisions. Therefore, the statute at issue in this case, as it applies here, is not preempted by the Noise Control Act.

Similarly, the Airport and Airway Improvement Act (AAIA) does not preempt the statute at issue here.  The AAIA regulates federal funding of airport development and improvement projects.  49 U.S.C. §47101 
et seq.
 (1994). The Illinois statute at issue here does not address federal funding.  Thus, the AAIA is not preemptive here.

The cases cited by the City to support its preemption argument
 
are distinguishable because they all involve state or local attempts to regulate the operation of aircraft in navigable airspace.  See 
County of Cook v. Preister
, 22 Ill. App. 3d 964, 969-70 (1974) (the court found federal preemption of a county regulation that restricted aircraft over a certain weight from using Pal-Waukee
 Airport); 
Price v. Charter Township
, 909 F. Supp. 498 (E.D. Mich. 1995) (the court found federal preemption of a local ordinance limiting frequency of flights); 
State of Minnesota  Public Lobby v. Metropolitan Airports Comm'n
, 520 N.W.2d 388 (Minn. 1994) (the court found federal preemption of state agency's maximum noise levels)
; 
Northeast Phoenix Homeowners' Ass'n v. Scottsdale Municipal Airport
, 130 Ariz. 487, 636 P.2d 1269 (App. 1981) (the court found federal preemption of an action seeking to limit
 
flight operations and impose curfew on flights); 
Gary Leasing, Inc. v. Town Board
, 127 Misc. 2d 194, 485 N.Y.S.2d 693 (1985) (the court found federal preemption of an ordinance limiting flight operations and imposing curfew on flights); 
Krueger v. Mitchell
, 112 Wis. 2d 88, 332 N.W.2d 733 (1983) (the court found federal preemption of a private cause of action seeking to enjoin flights over plaintiff's business
); 
Harrison v. Schwartz
, 319 Md. 360, 572 A.2d 528 (the court found federal preemption of a local ordinance imposing curfews and limitations on landing patterns); 
Township of Hanover v. Town of Morristown
, 135 N.J. Super. 529, 343 A.2d 792 (1975) (court found federal preemption of court order limiting times of flights);
 
Village of Bensenville v. City of Chicago
, 16 Ill. App. 3d 733, 735 (1973) (court found federal preemption of a nuisance action seeking to impose maximum noise levels).  Further, unlike this case, 
United States v. City of Berkeley
, 735 F. Supp. 937 (E.D. Mo. 1990), involved an ordinance that directly conflicted with the FAA's express authority to regulate air-navigation facilities.  See 
City of Berkeley
, 735 F. Supp. at 940.  The case at bar differs from these cases because the statute at issue here does not regulate the use of airspace or aircraft.  Therefore, the cases cited by the City are not controlling here.

Next, intervening plaintiffs Hyde and Philip argue that the trial court erred by dismissing them based on lack of standing
.  
Initially, we note that, although the trial court dismissed Hyde and Philip for lack of standing, the court actually was revisiting its decision to permit intervention.  Thus, we will review the court’s decision as a denial of intervention. 

Section 2--408 of the Code of Civil Procedure (Code) (735 ILCS 5/2--408 (West 1996)) governs intervention in civil proceedings.  It provides, in relevant part:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action:  (1) when a statute confers an unconditional right to intervene;  or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer.  

(b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common."  735 ILCS 5/2--408(a), (b) (West 1996).

As the wording in section 2--408 of the Code indicates, subsection (a) concerns intervention as a matter of right and subsection (b) involves intervention at the discretion of the court.  The purpose of the intervention is to expedite litigation by disposing of the entire controversy among the persons involved in one action to prevent a multiplicity of lawsuits.   
Board of Trustees of the Village of Barrington Police Pension Fund v. Department of Insurance
, 211 Ill. App. 3d 698 (1991).

A trial court's decision to grant or deny leave to intervene will not be disturbed absent an abuse of discretion.  
In re Application of the County Collector of Du Page County for Judgment for Delinquent Taxes for the Year 1992
, 181 Ill. 2d 237, 248 (1998).

Hyde and Philip argue that they should have been allowed to intervene as a matter of right under section 33 of the Aeronautics Act (620 ILCS 5/33 (West 1998)). This section provides:

"It shall also be the duty of every State, county and municipal officer charged with the enforcement of State and municipal laws to enforce and assist in the enforcement of all laws of this State pertaining to aeronautics."  620 ILCS 5/33 (West 1998).

Here, Hyde and Philip are not charged with the enforcement of State and municipal laws.  Therefore, the Aeronautics Act does not confer upon Hyde and Philip an unconditional right to intervene.

Hyde and Philip also contend that they should have been allowed to permissively intervene.  They argue that they have an interest as private citizens who reside in municipalities that will be adversely affected by the alleged planned O’Hare expansion.  Further, they have an interest as representatives of their constituents who would be adversely affected.  To intervene, a party does not need to have a direct legal interest in the pending suit, but he must have an interest that is greater than the general public's so that he will directly gain or lose by the legal effect of a judgment in the suit. 
Board of Trustees of the Village of Barrington Police Pension Fund
, 211 Ill. App. 3d at 711.  
Generally, nonparty litigants may not rely on other litigants to protect their interests. 
Freesen, Inc. v. County of McLean
, 277 Ill. App. 3d 68, 73 (1995).  However, when a governmental entity is involved, " 'interested parties legitimately may assume that their elected officials will adequately represent their interests as members of the general public.' "  
Freesen, Inc.
, 277 Ill. App. 3d at 73, quoting 
Standard Bank & Trust Co. v. Village of Oak Lawn
, 61 Ill. App. 3d 174, 179 (1978).  " 'Only when the interests of the general public diverge from those of the individual is the private party obligated to take action to protect his interests.' "  
Freesen, Inc.
, 277 Ill. App. 3d at 73, quoting
 
Standard Bank & Trust Co. v. Village of Oak Lawn
, 61 Ill. App. 3d 174, 179 (1978).   Here, Hyde and Philip, as private citizens, failed to persuade the trial court or this court why their private interests and those of their constituents would not coincide with those of the municipal parties and State’s Attorney Birkett.  State’s Attorney Birkett filed this action 
quo warranto
, on behalf of the same people Hyde and Philip represent.  Further, the municipalities Bensenville, Wood Dale, and Elmhurst, as well as Du Page County, are all named plaintiffs.  Hyde and Philip make no claim of having a special interest apart from these plaintiffs. While we may not have made the same decision as the trial court in this matter, under such circumstances, we cannot say that the trial court abused its discretion.  

Hyde and Philip cite 
People ex rel. Hanrahan v. Village of Wheeling
, 42 Ill. App. 3d 825 (1976), to support their argument. However, this case is distinguishable in that, in 
Hanrahan
, the municipality represented by the intervenors was not represented by other representatives of the same municipality.  Further, in 
Hanrahan
, the trial court allowed intervention, and we deferred to that decision, as we defer to the trial court's decision in this case.  Thus, 
Hanrahan
 is not helpful to Hyde's and Philip's position here.

Accordingly, we affirm the judgment of the circuit court of Du Page County denying plaintiffs' motion for partial summary judgment and injunction and dismissing intervening plaintiffs, Hyde and Philip.  We reverse the trial court's decision granting the City summary judgment, and we remand this cause for further proceedings.

Affirmed in part and reversed in part; cause remanded.

GEIGER and GROMETER, JJ., concur.