699 F.Supp. 742 (1988)
Ezra M. BEACHY and Norma C. Beachy, Plaintiffs,
v.
BOARD OF AVIATION COMMISSIONERS OF the CITY OF KOKOMO, INDIANA; L. Owen Bolinger, John Hingst, Robert P. Ross and Rex Veach, Individually and as Members of the Board of Aviation Commissioners of the City of Kokomo, Indiana; and the Board of County Commissioners of Howard County, Indiana, Defendants.
No. IP 88-9-C.
United States District Court, S.D. Indiana, Indianapolis Division.
November 21, 1988.
*743 Thomas J. Trauring, Fell McGarvey & Trauring, William C. Menges, Jr., Button Hillis & Menges, Donald J. Bolinger, Kokomo, Ind., for defendants.
Joseph H. Davis, Davis & Murrell Law Firm, Kokomo, Ind., Robert W. Geddes, Hume Smith Geddes & Green, Indianapolis, Ind., for plaintiffs.

ENTRY AND ORDER
McKINNEY, District Judge.
In this action, plaintiffs contend that defendants appropriated their property in violation of the Just Compensation Clause of the fifth amendment, and they seek compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff have taken a default judgment against the defendant Board of County Commissioners. The defendant Board of Aviation Commissioners have responded to plaintiffs' claim with a Motion to Dismiss. Plaintiffs opposed the Aviation Commissioners' Motion with a brief and an affidavit, and the Aviation Commissioners have moved to strike the affidavit. In addition, the Aviation Commissioners have requested a Stay of the damages hearing against the defaulted defendants until the resolution of the pending Motion to Dismiss.
This Court finds that plaintiffs' claim alleging constitutional violations is not yet ripe, and accordingly DISMISSES that claim without prejudice. To the extent plaintiffs attempt to assert separate section 1983 claims for violations of rights secured by federal statutes, the Court DISMISSES those claims with prejudice for failure to state a claim. Further, the Court GRANTS the Aviation Commissioners' Motion to Strike plaintiffs' affidavit. Given this disposition, the Aviation Commissioners' Motion to Stay is MOOT. The damages *744 hearing against the defaulted defendants will be held as scheduled.

MEMORANDUM

I. BACKGROUND
For the purposes of this Motion to Dismiss, the Court must accept the facts alleged in the Complaint as true. Those facts are as follows:
Plaintiffs own one hundred acres of land in Howard County, Indiana. They live and work on that land, and they have a tenant dairy farmer as well. The land is adjacent to the Kokomo Municipal Airport, which is controlled and operated by the defendant Board of Aviation Commissioners. Since 1966, the Aviation Commissioners have been trying to acquire certain easements over plaintiffs' land to accommodate increased air traffic; these easements are known in the trade as "avigation easements".
In order to acquire the easements, the Aviation Commissioners have from time to time invoked their power of eminent domain. See Ind. Code § 32-11-1-1. The first time the Aviation Commissioners used this power was in March of 1971, when they filed a Complaint for Condemnation of a Clear Zone Easement against the Beachys in the Howard Circuit Court. The parties settled that condemnation proceeding, and the court entered a judgment on the settlement in May of 1974.
Some time later, the Aviation Commissioners sought to acquire an easement in order to erect and maintain lights on plaintiffs' property. This time, rather than defend a condemnation proceeding, plaintiffs executed an easement agreement with the Commissioners. Subsequently, in January, 1981, the Commissioners tried to purchase a third easement. The plaintiffs refused to sell, and for some reason the Commissioners came back in March, 1984, with a lower offer for the same easement. Again, plaintiffs refused to sell, so the Commissioners filed a Complaint for Condemnation of the easement in the Howard Circuit Court. That action is apparently still pending.
In addition to filing the condemnation actions, the Aviation Commissioners have taken other steps to facilitate the expansion of the airport; they applied for and received federal funding for an extension of Runway 22; they initiated procedures to designate the plaintiffs' airspace as an "Airport Hazard Zone"; and they proposed an "airport area height restriction" zoning ordinance to the Howard County Commissioners. Further, when plaintiffs in 1977 presented a proposal to the Howard County Plan Commission to subdivide their property, the Aviation Commissioners recommended that the Plan Commission reject the proposal.
Plaintiffs contend that the Aviation Commissioners' conduct constitutes a taking in violation of the fifth amendment, made applicable to the States through the fourteenth amendment. Specifically, plaintiffs claim that the Aviation Commissioners acted unconstitutionally by: (1) designating plaintiffs' property an airport hazard zone without notice to plaintiffs; (2) recommending the rejection of plaintiffs' subdivision proposal; (3) proposing the height restrictions ordinance without instituting eminent domain proceedings; (4) permitting and encouraging pilots to use Runway 22 despite the lack of a valid avigation easement; (5) failing to prevent pilots from trespassing through plaintiffs' airspace; and (6) failing to comply with the Indiana eminent domain procedures. Plaintiffs further claim that the Aviation Commissioners violated plaintiffs' federal rights by failing to hold public hearings on the federally funded runway expansion as required by the Airport and Airway Improvement Act, 49 U.S.C.App. §§ 2201-2227, and by failing to comply with the requirements of the Relocation Assistance Act, 42 U.S.C. §§ 4601-4655. For all of these alleged violations, plaintiffs sue the Aviation Commissioners in their official and individual capacities under 42 U.S.C. § 1983, seeking compensatory and punitive damages and attorney fees.
The Aviation Commissioners respond by stating that plaintiffs' complaint is premature, in that plaintiffs have not yet instituted the inverse condemnation procedures *745 available to them under Ind.Code § 32-11-1-12.
For the reasons first announced in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed. 2d 126 (1985), this Court finds that plaintiffs' taking claim is not yet ripe. In addition, although plaintiffs do not differentiate between their claims of constitutional versus statutory violations under section 1983, this Court finds that plaintiffs' claims pertaining to federal statutes should be considered separately, and finds that the statutes cited by plaintiffs in support of their claim do not create rights enforceable under section 1983.

II. DISCUSSION

A. Ripeness of the Takings Claim
The ripeness doctrine is an element of the case or controversy requirement of Article III of the Constitution. Unity Ventures v. Lake County, 841 F.2d 770, 774-75 (7th Cir.1988). As it pertains to takings claims like the one at bar, the ripeness doctrine requires that the taking be complete before the property owner may sue for compensation. In order words, the fifth amendment's Just Compensation Clause does not prohibit public entities from appropriating private property for public use; instead, the amendment mandates that public entities pay just compensation for such property  so, a takings claim generally is not ripe until the government has demonstrated that it does not intend to properly pay for the appropriated property. See First English Evangelical Lutheran Church v. City of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 2385-86, 96 L.Ed.2d 250 (1987); see also Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 463 (7th Cir.1988).
In Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court examined the ripeness of a landowner's claim that certain governmental regulations as applied to his property effected a taking. The Court held that the landowner's claim was premature, for two reasons. First, the Court found that the governmental agency charged with implementing the regulations had not reached a final decision as to whether the impact of the regulations could be lessened or negated by a variance. Id. at 190-91, 105 S.Ct. at 3118-19. Second, and more importantly for the case at bar, the Court found that the landowner had not sought compensation under the State inverse condemnation procedures. The Court wrote:
"because the fifth amendment proscribes taking without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a Section 1983 claim." Id. at 194, n. 13, 105 S.Ct. at 3120, n. 13.
The Court continued, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until [he] has used the procedure and been denied just compensation." Id. at 195, 105 S.Ct. at 3121. And the Court concluded, "[the landowner] has not shown that the inverse condemnation procedure is unavailable or inadequate, and until [he] has utilized that procedure, [his] taking claim is premature." Id. at 196-97, 105 S.Ct. at 3121-22.
Under Williamson, a property owner must institute state inverse condemnation proceedings before seeking compensation in federal court under section 1983 for a fifth amendment violation. Only if the state lacks an adequate inverse condemnation scheme is this requirement excused. Williamson, 473 U.S. at 196, 105 S.Ct. at 3121; see also Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1456 (9th Cir.1987).
As the defendants in the case at bar point out, at least one court has applied the Williamson rule to a case involving the appropriation of property for an airport. In Katsos v. Salt Lake City Corporation, 634 F.Supp. 100 (D.Utah 1986), the plaintiff claimed that Salt Lake City had wrongfully taken his property by allowing low-level *746 flights in the airspace over his property and by enacting a zoning ordinance which limited residential development in the area. The court held that the availability of an inverse condemnation action under Utah law precluded the plaintiff's section 1983 claim. Id. at 106.
This Court finds that Indiana, like Utah, has adequate remedies available for inverse condemnation. In Ind. Code Chapter 32-11-1, the legislature set out the procedure for condemnation generally. As for inverse condemnation, the legislature declared:
"Any person having an interest in any land which has been or may be taken for any public use without having first been appropriated under this or any prior law may proceed to have his damages assessed under this chapter [32-11-1] substantially in the manner herein provided." Ind. Code § 32-11-1-12.
Plaintiffs argue that the Indiana inverse condemnation remedies should not preclude their section 1983 action, contending that section 1983 provides the only avenue for relief against the Aviation Commissioners individually. In this argument, plaintiffs fail to note that under certain circumstances in inverse condemnation actions, Indiana case law provides for the recovery of punitive damages and attorney fees. See Indiana & Michigan Electric Co. v. Stevenson, 173 Ind.App. 329, 363 N.E.2d 1254, 1261 (1977) (proof of tortious or malicious conduct warrants punitive damages in inverse condemnation action), and see City of Garrett v. Terry, 512 N.E.2d 405, 407 (Ind.1987) (property owner can recover attorney fees in an inverse condemnation action). Given the availability of the additional measure of damages and attorney fees, plaintiffs could conceivably recover in state court an amount equal to their prayer in the case at bar. As such, plaintiffs' argument concerning the availability of remedies must fail.
Plaintiffs also argue that their section 1983 action is necessary to remediate the Aviation Commissioners' failure to follow the condemnation procedures in Ind. Code Chapter 32-11-1. Specifically, plaintiffs maintain that the Commissioners took possession of plaintiffs' airspace without paying the appraiser assessment to the condemnation court as required by Ind. Code § 32-11-1-7; that the Commissioners amended their pending Complaint for Condemnation without making the requisite offer to purchase under Ind. Code 32-11-1-2.1(b); and that the Commissioners did not specifically describe the property sought to be condemned as required by Ind. Code § 32-11-1-2. See Memorandum in Opposition to Motion to Dismiss, at 7-9.
These concerns are most properly brought before the Indiana court in the condemnation action. See e.g., State ex rel. Socony Mobil Oil Co. v. Delaware Circuit Court, 245 Ind. 154, 196 N.E.2d 752, 755 (1964) (payment of assessed damages is condition precedent to taking possession of property), and Hagemeier v. Indiana & Michigan Electric Co., 457 N.E.2d 590, 591-93 (Ind.App.1983) (trial court judgment condemning a right-of-way reversed because condemnation complaint failed to adequately describe right-of-way). Until the conclusion of the pending condemnation proceedings, this Court cannot entertain plaintiffs' challenges to the Commissioners' compliance with the Indiana condemnation procedures.
This Court expresses no opinion on the merits of plaintiffs' constitutional claims. If, after resolution of the pending action, plaintiffs believe they remain uncompensated for certain property rights, they may return to this Court. Until that time, their constitutional claims are premature.

B. Statutory Rights Theories
Prior to 1980, there was some confusion among the courts as to whether section 1983 provided remedies for violations of rights secured by federal statutes in addition to providing remedies for rights secured by the Constitution. In 1980, however, the Supreme Court held that violations of statutory rights are actionable under section 1983. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). The next year, the Court narrowed the applicability of the Thiboutot *747 holding. In Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) the Court declared that section 1983 does not provide a remedy for violation of a statutory provision unless the underlying statute creates enforceable rights, privileges, or immunities. Id. at 19, 101 S.Ct. at 1541. And, in Middlesex County Sewerage Authority v. National Sea Clammers Assoc., 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Court found that where the underlying statute creates a comprehensive remedial scheme, prospective plaintiffs must sue under that statute, not under section 1983. Id. at 15, 101 S.Ct. at 2623.
In their general section 1983 complaint, plaintiffs claim that the Aviation Commissioners violated section 2208 of the Airport and Airway Improvement Act, and section 4651 of the Relocation Assistance Act, and they seek compensation for those alleged violations. This Court finds that neither of the cited statutes creates a right enforceable under section 1983.
Congress entitled the relevant section of the Relocation Assistance Act as the "Uniform policy on real property acquisition practices". 42 U.S.C. § 4651. If, as the language implies, Congress intended to express policy goals only, the statute is not actionable under section 1983. See Pennhurst, 451 U.S. at 19, 101 S.Ct. at 1541. Moreover, any inference that Congress intended to create enforceable rights in section 4651 is negated by the language of a companion statute. Section 4651 reads: "[n]o Federal Agency head shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property". 42 U.S.C. § 4651(8). But, section 4602 reads: "section 4651 of this title creates no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation". 42 U.S.C. § 4602.[1] Clearly, Congress did not intend in the Relocation Assistance Act to create rights actionable under section 1983.
The provisions of the Airport and Airway Improvement Act are less clear. Section 2208(b), the section at issue here, reads:
"No project grant application for airport development involving the location of an airport, an airport runway, or a major runway extension may be approved by the Secretary unless the sponsor of the project certifies to the Secretary that there has been afforded the opportunity for public hearings for the purpose of considering the economic, social and environmental effects of the airport runway location." 49 U.S.C.App. § 2208(b)(6)(A).
Plaintiffs allege that the Aviation Commissioners, as sponsors of a federally funded project, violated the Act by failing to hold public hearings on the expansion of Runway 22.
Two recent cases guide this Court's analysis of the alleged violation. In Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Court held that the provisions of the Housing Act which imposed rent ceilings and deemed utility payments part of that rent created rights enforceable under section 1983. Although the Court focused primarily on whether Congress had created a comprehensive enforcement scheme to the exclusion of section 1983, the Court briefly addressed whether the statute created any enforceable right. The Court found that because Congress was specific and definite in its description of rent ceilings, the provision created a mandatory limitation enforceable under section 1983. Id. 107 S.Ct. at 774-75.
In Edwards v. District of Columbia, 821 F.2d 651 (D.C.Cir.1987), the Court melded the Wright holding with other relevant Supreme Court precedent to find that another provision of the Housing Act did not create a cause of action under section 1983. In Edwards, the plaintiff tenants sued the Department of Housing and Urban Development and the District of Columbia under *748 section 1983, alleging violations of rights secured by certain sections of the Housing Act, including a section similar to the statute at issue in the instant case. The section at issue in Edwards read:
"The Secretary may not approve any application [for demolition of a housing project] or furnish assistance under this section ... unless 
(1) the application from the public housing agency has been developed in consultation with tenants and tenant councils, if any, who will be affected by the demolition or disposition." 42 U.S.C. § 1437p.
At the outset of its opinion, the Edwards court stated that it read Pennhurst and Wright together as fashioning a two-prong test for whether statutes created rights enforceable under section 1983. To create enforceable rights, the court said, Congress must first employ "sufficiently specific and definite statutory language" and second, must "give notice to the relevant governmental unit of its obligations in relation to such rights." Edwards, 821 F.2d at 657. Applying the two-prong test to determine whether the relevant provision of the Housing Act created enforceable rights, the court wrote:
"in detailing how courts have construed federal grant-in-aid statutes in response to rights claims, the statutory language in question must be such that the affected state or local government unit can accept federal funds with the knowledge that it is undertaking certain obligations, with correlative rights being secured to the affected citizens." Edwards, 821 F.2d at 658.
The court found that the provision of the Housing Act at issue did not establish an independent duty on the part of the defendant District of Columbia under section 1983. Rather, the Act formulated conditions precedent to approval of a demolition application. Id. at 659. In this way, the Act imposed a legal duty on the Secretary of Housing and Urban Development. As the court noted, "were the Secretary to approve a demolition application without [the] prerequisites having been satisfied, the affected tenants would have a strong case against the Secretary under the [Administrative Procedure Act] to rescind the approval." Id. at 658.
Just as the Housing Act imposed a legal duty on the Secretary of Housing and Urban Development, the Airport Improvement Act stresses that the Secretary of Transportation is responsible for ensuring that project grant recipients comply with the Act's conditions for funding. By focusing on the Secretary's responsibilities, the Airport Improvement Act may allow plaintiffs to sue the Secretary to obtain revocation of the airport grant for failure to comply with the hearing requirement, but nothing in the Act indicates that plaintiffs may sue for enforcement of the hearing requirement under section 1983.
This conclusion is not without difficulties. An inquiry into whether a federal statute creates rights under section 1983 is rarely simple, as demonstrated by the three separate opinions in Edwards. As Congress learns of the puzzles courts face in handling burgeoning section 1983 litigation, they may become more precise in their statutory drafting and include express directions concerning the relationship between the drafted statute and section 1983. Until that time, courts must continue to construe the statutes as best they can, in accordance with the statutory language and the relevant legislative history.
The legislative history of the Airport Improvement Act supports this Court's conclusion that the hearing requirement does not create a right enforceable under section 1983. As originally drafted, the bill would have given the Secretary of Transportation authority to sue project grant recipients for specific performance of grant agreements, including, apparently, the statutory conditions. The Conference Committee deleted that section, relying on the preliminary committee comment that the "Committee fully recognizes that the Secretary may initiate suit and obtain specific performance of grant agreement assurances under existing law." S.Rep. No. 97-494, Vol. 2, 97th Cong., 2d sess. 32, reprinted in 1982 U.S. Code Cong. & Admin. News 1156, 1185. Upon deleting the section, the Conference *749 Committee wrote, "[the exclusion of the judicial enforcement section] in no way affects any rights which the Department of Transportation may have to judicial enforcement." H.R.Conf.Rep. No. 97-760, 97th Cong., 2d Sess. 717, reprinted in 1982 U.S. Code Cong. & Admin.News 1460, 1479.
In addition, concerning section 2208, which contains the hearing requirement at issue here, the Conference Committee stated, "The section provides conditions which must be met by the Secretary before project applications for airport planning or development may be approved." 1982 U.S. Code Cong. & Admin.News at 1472, 73 (emphasis added) (statement in reference to Senate amendment which was essentially the same as the final statute).
Given the lack of any reference in the legislative history to the creation of rights in favor of those impacted by airport projects, the express references to existing methods of enforcement of the statutory conditions, and the emphasis on the responsibilities of the Secretary, this Court cannot justifiably find that the hearing provisions of the Airport Improvement Act create any rights actionable under section 1983. Accordingly, the Court is constrained to dismiss plaintiffs' statutory rights theory for failure to state a claim.

III. DEFENDANTS' MOTION TO STRIKE
When an opposing party files an affidavit in response to a Motion to Dismiss, the trial court may disregard the affidavit. Ware v. Associated Milk Producers, Inc., 614 F.2d 413, 415 (5th Cir. 1980), citing 5 A. Wright & C. Miller, Federal Practice and Procedure § 1366. This Court finds that the Motion to Dismiss can be resolved on the basis of the complaint, without reference to plaintiffs' affidavit, so the Court grants defendants' Motion to Strike.
IT IS SO ORDERED.
NOTES
[1] Similarly, the Indiana equivalent of the Federal Relocation Assistance Act declares that the provisions concerning public purchase of land create no legal rights or liabilities. See Ind. Code § 8-13-18.5-11(8). Compare Ind. Code § 8-13-18.5-15.