Daniel HOAGLAND, et al., Plaintiffs,

v.

**TOWN OF CLEAR LAKE, INDIANA, et al., Defendants.**

**No. 1:03–CV–241.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 28, 2004.

John R. Price, John R. Price and Associates, Indianapolis, IN, for Plaintiffs.

Donald J. Stuckey, Van Horne Turner Stuckey and McCanna, Auburn, IN, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

## I. INTRODUCTION

This case is the latest chapter in a seven-year, multi-lawsuit feud between Defendant Town of Clear Lake, Indiana, and one of its residents, Plaintiff Daniel Hoagland.[1] The history of ill will and litigiousness between the parties is considerable: Hoagland has served multiple "Notices of Tort Claims" on Clear Lake (some demanding as much as $200,000,000), the parties have slugged it out twice in Indiana state court, and Hoagland has now alleged several violations of his constitutional rights in federal court. At one point, Hoagland even posted on his property a homemade "No Trespass" sign warning Clear Lake officials that "This land is privately owned by an American national, with sovereign rights of God the Creator," and making the startling claim that "Violations of the owners Private Christian, or property rights ... shall be assessed a civil penalty of one million dollars in U.S. Dollars for each violation," as well as "up to ten years in prison." (*See* Aff. of Robert Troll, Ex. 6.)

This bitter dispute centers on, of all things, Hoagland's preferred method of commuting to work. Hoagland routinely pilots a helicopter between his home in

---

1. The other plaintiffs in this case are Hoagland's wife and two businesses under his control, and the other defendants are (or were) officials of the Town of Clear Lake. These other parties play a minor role in the case, so for simplicity's sake, this opinion refers to Plaintiffs as "Hoagland" and Defendants as "Clear Lake."

Clear Lake and his business in Fort Wayne, Indiana, roughly sixty-one miles away. To that end, his Clear Lake property includes a heliport, hangar, and two helicopter landing pads. Over the years, Clear Lake has made several attempts to limit Hoagland's use of these amenities, and Hoagland has fought them at every step.

The feud has now spilled over into federal court, with Hoagland bringing a flurry of federal constitutional and state-law claims, both for damages and for invalidation of certain Clear Lake ordinances.[2] However, for the reasons given below, none of Hoagland's federal claims survive summary judgment, and this Court must decline to exercise its supplemental jurisdiction over Hoagland's state-law claims. In short, although Hoagland strives mightily to make a federal case out of his squabble with Clear Lake, he can get no relief here.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Clear Lake is a small town in the northeast corner of Indiana, with less than 300 residents and only one full-time government employee. (Troll Aff. ¶ 2.) Its ordinances include the 35–page–long Ordinance 84, a "Master Plan ... providing for the zoning of the incorporated area of the town," which aims to "regulat[e] the ... use of land" in Clear Lake. (Second Am. Compl., Ex. C at 1.)

On August 12, 1999, Clear Lake sued Hoagland in Steuben County Superior Court. (*Id.*, Ex. B.) The original complaint alleged that the helicopter takeoffs and landings at Hoagland's residence constituted a "public nuisance" and prayed for a permanent injunction prohibiting them. (*Id.*) Although this complaint did not allege violations of any specific Clear Lake ordinances (see *id.*), Hoagland claims that Clear Lake later amended its complaint to allege violations of specific ordinances (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. at 5).[3] However, a Clear Lake official later admitted that there were no ordinances at that time prohibiting helicopter use in the town. (Troll. Dep. at 60.) Hoagland answered the complaint and asserted counterclaims, including the charge that Clear Lake committed an "inverse condemnation" of his property. (Pl.'s Desig. of Evid., Ex. 7 ¶ 35.)

Hoagland and Clear Lake submitted the case to mediation on April 14, 2000. (Aff. of Daniel Hoagland ¶ 15.) According to Hoagland, Clear Lake officials repeatedly claimed at mediation that "an existing zoning ordinance clearly prohibited the use of his heliport and landing pad" (*id.* ¶ 16), even though, as noted above, no such ordinance existed at that time. Hoagland eventually acquiesced in a "Settlement Agreement" in which, among other conditions, Hoagland agreed to drop most of his claims and abide by several restrictions on his helicopter operations, while Clear Lake dropped its claims and promised to pay Hoagland an indeterminate sum "to be negotiated" with its insurance company.[4] (Pl.'s Desig. of Evid., Ex. 10.) Hoagland avers that he agreed to this settlement only because of Clear Lake's alleged mis-

---

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

3. The portion of the record cited by Hoagland to support this fact does not contain a copy of the alleged amended complaint.

4. According to Hoagland, a portion of the lawsuit was not resolved by the Settlement Agreement, and it proceeded to a jury trial in early 2004, where Hoagland recovered damages of $14,716.91. (Pl.'s Mem. in Supp. at 15.) The record is unclear on which claims were resolved by the Settlement Agreement and which were resolved by this jury trial.

representations about an ordinance prohibiting use of his heliport. (Hoagland Aff. ¶ 20.) He also testifies that Clear Lake never paid him anything under the Settlement Agreement. (*Id.* ¶ 18.)

On May 8, 2000, Clear Lake began the process of amending Ordinance 84, the master zoning ordinance, to cover aircraft landing areas. (*See* Pl.'s Desig. of Evid., Ex. 13 at 1.) After many months of discussion by the Town Council and the Plan Commission (*see* Pl.'s Mem. in Supp. at 8–14), Clear Lake adopted Ordinance 268 on April 9, 2001 (Troll Aff., Ex. 8). Ordinance 268 designates an "[a]ircraft landing strip, pad, or space" as a "special use" requiring special permission of the Zoning Board of Appeals. (*Id.;* Second Am. Compl., Ex. C at 14.) It also provides that any preexisting unapproved aircraft landing area must be discontinued within five years of the ordinance's passage or upon transfer of the subject property (whichever comes first), subject to one exception which need not be detailed here.[5] (Troll Aff., Ex. 8.)

In August 2001, Hoagland applied to the Federal Aviation Administration for a "Public Use Designation" for his heliport. (Hoagland Aff. ¶ 30.) According to Hoagland, Clear Lake falsely told the Administration that a court order prohibited public use of the heliport, and the Administration denied his application as a result. (*Id.*)

Hoagland reports that he recently brought a new lawsuit against Clear Lake in Steuben County Superior Court. The new suit alleges contract and tort claims based on Clear Lake's alleged failure to pay Hoagland under the Settlement Agreement, and it remains pending in state court. (Pl.'s Mem. in Supp. at 15.) Hoagland claims that, in the course of this new suit, he discovered for the first time that there was no ordinance prohibiting use of his heliport when Clear Lake first sued him in 1999. (*See id.* at 6–8.)

Hoagland filed the instant suit on June 23, 2003. (*See* Compl.) The parties filed cross-motions for summary judgment on July 30, 2004. (Docket # 54, 59.) Hoagland also filed a motion to strike (Docket # 68) and a motion for oral argument (Docket # 72), and Clear Lake filed two motions to strike (Docket # 61, 73) and a motion for leave to file supplemental affidavits (Docket # 74). All are now ripe for decision.

## III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne,* 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving par-

---

5. Clear Lake later had its ordinances codified and published, and in the published version of this ordinance (codified as " § 154.045") there is no exception. That is, the published version simply states that any preexisting unapproved aircraft landing area must be discontinued after five years or upon transfer of the subject property, whichever comes first. (*See* Pl.'s Desig. of Evid., Ex. 27.) Clear Lake believes that this was an error by the publisher, and it has since adopted Ordinance 288, which reinserts the exception. (Troll Aff. ¶ 14.)

ty and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

The existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Services, Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir.2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir.2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir.1998)).

## IV. DISCUSSION

Hoagland brings a dizzying array of claims in this case. He first argues that Ordinances 84, 268, § 154.045, and 288 ("the Ordinances") should be invalidated because (1) they are preempted by federal law; (2) Clear Lake was never properly incorporated and thus has no power to adopt ordinances; (3) the heliport is outside Clear Lake's territorial limits and thus not subject to the Ordinances; and (4) the Ordinances were not enacted pursuant to a valid "comprehensive plan." He then claims that Clear Lake, and in some cases the other individual defendants, owe him damages for (5) inversely condemning his property, which entitles him to just compensation under the Takings Clause of the Fifth Amendment; (6) violating 42 U.S.C.

§ 1983 by depriving him of several constitutional rights; (7) violating 42 U.S.C. §§ 1985 and 1986 by conspiring to deprive him of constitutional rights and failing to prevent such a conspiracy; and (8) committing actual or constructive fraud.

Of these claims, only (1), (5), (6), and (7) arise under federal law. For the reasons given below, the Court will grant summary judgment to Clear Lake on (1), (6), and (7), and dismiss (5) for lack of subject matter jurisdiction. With the federal claims thus disposed, the Court will decline to exercise subject matter jurisdiction over Hoagland's remaining claims.

### A. The Ordinances Are Not Preempted By Federal Law

 Hoagland's first federal claim is that the Ordinances are preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 *et seq.* Preemption doctrine springs from the Supremacy Clause of the Constitution, which provides that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the Supreme Law of the land." U.S. Const., Art. VI, cl. 2. In accordance with this clause, federal law preempts state and local laws "that interfere with, or are contrary to, federal law." *Boomer v. AT & T Corp.*, 309 F.3d 404, 417 (7th Cir.2002) (internal quote marks omitted). There are three ways in which federal law can preempt state and local law: (1) express preemption; (2) conflict (or "implied") preemption; and (3) field (or "complete") preemption. *Id.* Express preemption occurs where "a federal statute explicitly provides that it overrides" state or local law. *Id.* Conflict preemption occurs where "it is impossible for a private party to comply with both [local] and federal requirements, ... or where [local] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting

*Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). Finally, field preemption occurs where "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (internal quote marks omitted).

Hoagland's briefs are hazy on which of these three theories of preemption applies to this case. Although he often speaks the language of express preemption, every case he cites relies on field preemption. For completeness, the Court will consider each theory in turn.

■ Express preemption can only be found in the explicit language of a federal statute, *Boomer,* 309 F.3d at 417, and the FAA contains a clause discussing preemption: "[A] political subdivision of a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier." 49 U.S.C. § 41713(b)(1). Hoagland is an "air carrier" within the meaning of this clause,[6] so the question is whether the Ordinances are "related to" Hoagland's "price, route, or service."

On the face of them, the Ordinances are related to land use, rather than the price, route, or service of Hoagland's helicopter operations. Ordinance 84 is Clear Lake's master zoning plan, and its preamble states that its general purpose is to "regulat[e]" the "use of land." (Second Am. Compl., Ex. 3 at 1.) Ordinances 268, § 154.045, and 288 amend this master plan by limiting or banning the use of land as an "aircraft landing strip, pad, or space." (Troll Aff., Ex. 8; Pl.'s Desig. of Evid., Ex.

27.) In other words, the Ordinances regulate how Hoagland uses his land, not how he operates his helicopter; any effect they might have on Hoagland's prices, routes, or service is tangential. Therefore, they are not expressly preempted by the FAA.

■ Turning to field preemption, Hoagland cites a slew of cases where state and local laws were found preempted because of pervasive federal regulation. However, all of these cases are distinguishable from the instant case, because none of them involve land-use regulations.

Hoagland begins with a Supreme Court decision, *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). The plaintiffs in *City of Burbank* challenged a local ordinance which attempted to control aircraft noise by prohibiting certain types of planes from taking off between 11 p.m. and 7 a.m. *Id.* at 625, 93 S.Ct. 1854. The Court extensively reviewed the FAA and its amendment by the Noise Control Act of 1972, including the legislative history of both acts. *Id.* at 626–38, 93 S.Ct. 1854. The Court acknowledged that the noise-control ordinance was not expressly preempted, but nonetheless held that "the pervasive nature of the scheme of federal regulation of aircraft noise ... leads us to conclude that there is pre-emption." *Id.* at 633, 93 S.Ct. 1854.

Hoagland cites several lower-court cases which rely on *City of Burbank* to strike down noise control ordinances. However, none of these cases involves a regulation of land use; rather, all of them rely on *City of Burbank's* finding that federal regulation of *aircraft noise* is too pervasive to allow state or local regulation. *Pirolo v. City of Clearwater,* 711 F.2d 1006, 1008 (11th Cir.1983) (preempting local ordi-

---

**6.** The FAA defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). Clear Lake does not dispute that Hoagland meets this definition.

nances "prohibiting night operations" and "prescribing air traffic patterns"); *San Diego Unified Port Dist. v. Gianturco,* 651 F.2d 1306, 1308, 1312 (9th Cir.1981) (preempting "curfew on aircraft flights"); *Price v. Charter Township of Fenton,* 909 F.Supp. 498, 505 (E.D.Mich.1995) (preempting ordinance that "limit[ed] the frequency of flights of certain [noisy] airplanes"); *Blue Sky Entm't, Inc. v. Town of Gardiner,* 711 F.Supp. 678, 695 (N.D.N.Y. 1989) (preempting town law which, *inter alia,* "attempted to regulate the noise generated by aircraft taking-off and landing at the airports"); *United States v. City of Blue Ash, Ohio,* 487 F.Supp. 135, 135, 137 (S.D.Ohio 1978) (preempting ordinance requiring departing planes to make "Noise Abatement Turns"), *aff'd,* 621 F.2d 227 (6th Cir.1980).

In a similar vein, Hoagland also cites several cases which apply the reasoning of *City of Burbank* to state and local attempts to regulate air safety. But again, none of these cases deals with a regulation of land use, such as the one at issue in this case; rather, they hold that pervasive federal regulation of *air safety* leaves no room for state and local safety regulations. *See Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 364, 367 (3rd Cir.1999) (preempting state standards of care for air safety); *French v. Pan Am Express, Inc.,* 869 F.2d 1, 1, 6–7 (1st Cir.1989) (preempting state statute regulating subjection of pilots to drug testing); *United States v. City of Berkeley,* 735 F.Supp. 937, 938, 941 (E.D.Mo.1990) (preempting building code's prevention of radar system installation due to "pervasive" federal regulation of "airspace management, air navigation facilities, and air safety" and interference with federal statutory objective); *Command Helicopters, Inc. v. City of Chicago,* 691 F.Supp. 1148, 1148, 1150 (N.D.Ill.1988) (preempting ordinance requiring certain equipment for helicopter external-load lifting).

The only case cited by Hoagland which comes close to supporting his argument is a Ninth Circuit decision, *Burbank–Glendale–Pasadena Airport Auth. v. City of Los Angeles,* 979 F.2d 1338 (1992). That case involved a local ordinance "requiring prior submission and approval of any plans for development on a parcel of Airport land that is used exclusively for airplane landings and takeoffs." *Id.* at 1339. The court declared that "[i]t is settled law that non-proprietor municipalities are preempted from regulating airports in any manner that directly interferes with aircraft operations," citing *City of Burbank* and *Gianturco* for the proposition. *Id.* at 1340. With little further analysis, the court found the ordinance preempted. *Id.* at 1340–41.

Hoagland seizes on this case, particularly its interpretation of *City of Burbank,* to argue that Clear Lake's land-use regulations are similarly preempted. However, this Court declines to follow *Burbank–Glendale–Pasadena,* partly because it is not controlling authority, but mostly because it is unpersuasive. The Ninth Circuit cited only two cases in support of its finding, and it misstated the holdings of those cases. As explained *supra, City of Burbank* and *Gianturco* do not hold that the FAA preempts any regulation "that directly interferes with aircraft operations"; rather, they stand for the much narrower proposition that the FAA preempts regulation of aircraft noise. *See City of Burbank,* 411 U.S. at 633, 93 S.Ct. 1854 ("the pervasive nature of the scheme of federal regulation of *aircraft noise* ... leads us to conclude that there is preemption" (emphasis added)); *Gianturco,* 651 F.2d at 1316 (preempting flight curfew because it impinged on "airspace management" and "federal control of *aircraft noise*" (emphasis added)). In short, *Burbank–Glendale–Pasadena* is cursorily and poorly reasoned, and thus this Court joins

others that have declined to follow it. *City of Cleveland, Ohio v. City of Brook Park, Ohio,* 893 F.Supp. 742, 751 (N.D.Ohio 1995) ("[*Burbank–Glendale–Pasadena's* ] view of the scope of the Aviation Act is simply broader than that implied in any reasonable reading of the statute"); *In re Commercial Airfield,* 170 Vt. 595, 752 A.2d 13, 16 (2000) ("we find the Ninth Circuit's cursory review of the preemption issue unhelpful ... and decline to follow [it]"); *see also People v. City of Chicago,* 329 Ill.App.3d 477, 263 Ill.Dec. 882, 769 N.E.2d 84, 94 (2002), *rev'd in part on other grounds,* 202 Ill.2d 36, 269 Ill.Dec. 21, 779 N.E.2d 875 (2002).

To sum up, Hoagland does not provide any persuasive cases holding that state and local land-use regulations are preempted due to pervasive federal regulation. However, several cases hold the precise opposite: that the FAA leaves state and local governments free to regulate land use.

The most prominent of these cases is *Gustafson v. City of Lake Angelus,* 76 F.3d 778 (6th Cir.1996). *Gustafson* featured an ordinance prohibiting the landing of seaplanes on a local lake. *Id.* at 780. The Court first distinguished *City of Burbank,* noting that it only dealt with federal regulation of aircraft noise, not regulation of aircraft landing sites. *Id.* at 784. The court then reviewed the pertinent federal statutes and administrative regulations and concluded that "[f]ederal preemption of the airspace under the Act does not limit the right of local governments to designate and regulate aircraft landing areas." *Id.* at 790. Accordingly, it held that the ordinance was not preempted.[7] *Id.*

Many other state and federal courts, applying similar reasoning, have found that regulation of landing sites, or land-use

regulations in general, are not subject to field preemption. *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 219 (8th Cir.1990) ("We see no conflict between a city's regulatory power over land use and the federal regulation of airspace"); *Broadbent v. Allison,* 155 F.Supp.2d 520, 524 (W.D.N.C. 2001) ("deciding whether to allow planes to land and takeoff from a certain location is a quintessential land use issue over which state and local governments possess near-plenary authority"); *City of Cleveland,* 893 F.Supp. at 751 ("The Federal Aviation Act does not occupy the field of land use regulations"); *Faux–Burhans v. County Comm'rs of Frederick County,* 674 F.Supp. 1172, 1173–74 (D.Md.1987) (holding that "zoning restrictions on private airfield operations" are not preempted), *aff'd,* 859 F.2d 149, 1988 WL 97345 (4th Cir.1988); *City of Chicago,* 263 Ill.Dec. 882, 769 N.E.2d at 93 ("the [FAA] does not preempt state and local ordinances that regulate land use without directly regulating the flight operations of aircraft in navigable airspace"); *Tanis v. Township of Hampton,* 306 N.J.Super. 588, 704 A.2d 62, 67 (1997) (rejecting plaintiff's argument that "township's authority to adopt or apply land use regulations to prohibit a private landing strip is preempted"); *In re Commercial Airfield,* 752 A.2d at 16 ("the federal government has not pervasively occupied the field of land-use regulations relating to aviation"). And one case, although somewhat dated, specifically found that state and local regulation of private helicopter pads (such as Hoagland's) are not preempted. *Garden State Farms, Inc. v. Bay,* 77 N.J. 439, 390 A.2d 1177, 1182 (1978) ("federal legislation and regulation have not preempted state and local jurisdiction with respect to the placement of private helistops").

---

7. Along the way, the court also persuasively distinguished three cases upon which Hoagland now relies: *Blue Sky Entm't, Price, and Command Helicopters. See Gustafson,* 76 F.3d at 786–88.

In short, the clear weight of federal and state case law supports Clear Lake's contention that the Ordinances are not subject to field preemption. Moreover, the cases that Hoagland cites in favor of preemption are either irrelevant or unpersuasive. Accordingly, the Court finds that as a matter of law, the Ordinances are not preempted by federal law.

### B. Hoagland's Potential Takings Clause Claim Is Premature

■ Hoagland also asserts a claim of inverse condemnation; that is, he contends that the restrictions placed on him by the Ordinances amount to a government taking for which he deserves compensation under the Fifth Amendment. *See* U.S. Const. amend. V. But whatever the merits of this claim may be, it is not ripe for adjudication in this Court.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." *Id.* This limit on government power is applicable to the States under the Fourteenth Amendment. *E.g., Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). In some circumstances, "[t]he application of a general zoning law to particular property" can constitute a taking for which compensation is due. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Relying on *Agins* and its progeny, Hoagland asserts an inverse-condemnation claim against Clear Lake.[8]

However, in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108,

87 L.Ed.2d 126 (1985), the Supreme Court held that a Fifth Amendment takings claim is not ripe unless the plaintiff has first sought compensation through state procedures. As the Court put it:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. . . . Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking. . . . [Thus], if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Id.* at 194–95, 105 S.Ct. 3108 (internal citations and quote marks omitted). The Court then noted that Tennessee, the state at issue, recognizes inverse-condemnation claims seeking compensation for takings. *Id.* at 196, 105 S.Ct. 3108. Because the claimant had not used that procedure, the Court found the Fifth Amendment claim premature. *Id.* at 196–97, 105 S.Ct. 3108. Like Tennessee, Indiana provides a state-law cause of action for inverse condemnation, *see* Ind.Code § 32–24–1–16, and thus Hoagland cannot sustain a taking claim in this Court unless he has unsuccessfully sought compensation in an Indiana court. *SGB Fin. Serv., Inc. v. Consol. City of Indianapolis–Marion County, Indiana*, 235 F.3d 1036, 1037–38 (7th Cir.2000); *Beachy v. Bd. of Aviation Comm'rs of Kokomo, Indiana*, 699 F.Supp. 742, 745–46 (S.D.Ind.1988).[9]

---

8. "Inverse condemnation is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *Agins,* 447 U.S. at

258 n. 2, 100 S.Ct. 2138 (internal quote marks omitted).

9. Hoagland makes a poorly developed argument that, contrary to *Williamson County* and

Hoagland argues that he met this requirement during Clear Lake's 1999 state-court lawsuit against him, since one of his counterclaims in that suit alleged that certain actions by Clear Lake "constitute[d] an inverse condemnation" of his real estate. (Pl.'s Desig. of Evid., Ex. 7 ¶ 35.) However, that counterclaim was filed on April 7, 2000 (*id.* at 11), and Hoagland's Fifth Amendment claim in this Court is based on amendments to the Ordinances that were not adopted until April 9, 2001 (*see* Second Am. Compl. ¶¶ 50–55). Thus, the taking of which Hoagland complained in state court cannot possibly be the same taking that he alleges in this forum; in other words, he has not sought compensation in Indiana courts for the injury he now alleges.

But even assuming *arguendo* that Hoagland's counterclaim in the 1999 litigation *was* based on the same injury he now alleges, his claim still fails because he has not shown that the counterclaim was unsuccessful. *Williamson County* requires a plaintiff to show not only that he used the available state procedures, but that he was "denied just compensation." 473 U.S. at 195, 105 S.Ct. 3108. Hoagland and Clear Lake entered into a partial settlement of their claims in the 1999 litigation, and then the remainder of the case went to trial, at which Hoagland won an award of

$14,716.91. While the record is murky on which of Hoagland's many counterclaims in that case were settled and which went to trial, there is no indication that any of them were dismissed, thrown out on summary judgment, or rejected by the jury. In other words, to the extent that the 1999 lawsuit included Hoagland's current taking claim, he cannot show that he was denied just compensation, because he either settled that claim or secured a favorable verdict on it. Thus, his taking claim is premature under *Williamson County* and its progeny.[10]

In sum, Hoagland has not shown that he has used Indiana's inverse-condemnation procedure for the taking claim he now presents, and even if he had, he could not possibly show that he was denied just compensation. Accordingly, his taking claim is not ripe and must be dismissed for lack of subject matter jurisdiction. *Patel v. City of Chicago*, 383 F.3d 569, 573 (7th Cir. 2004) ("We have subject matter jurisdiction over only those takings claims for which the *Williamson County* requirements are satisfied or otherwise excused." (internal quote marks omitted)).

*C. Hoagland's §§ 1983, 1985, and 1986 Claims Are Barred by the Statute of Limitations*

Hoagland's complaint and summary judgment briefs also contain a confusing

its progeny, he is not required to exhaust state inverse-condemnation procedures before asserting a Fifth Amendment claim. (*See* Pl.'s Resp. To Def.'s Mot. for Summ. J. at 13.) He cites *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), in support of his argument, but neither of those cases deals with a Fifth Amendment taking claim, and Hoagland does not explain how they relate to this case or negate the clear holding of *Williamson County*. Hoagland also attempts to salvage his taking claim by making several arguments why he should not have to exhaust his *administrative* remedies (Pl.'s Resp. at 14–16), but

these are irrelevant, as the requirement of exhausting his *state-court* remedies is at issue.

10. The Court can conceive of an argument by Hoagland, though he has not made it, that the $14,716.91 verdict undervalued his loss, and that he therefore was denied just compensation in Indiana's courts. (This assumes that the verdict was for his inverse-condemnation claim and not some other claim—again, the record is unclear.) But even if this were the case, he would have to appeal the verdict in order to fully exhaust Indiana's inverse-condemnation remedies, and there is no indication that he has done so.

mishmash of civil-rights claims. He invokes three federal statutes: (1) 42 U.S.C. § 1983, which imposes liability on state actors who deprive individuals of federal constitutional rights; (2) 42 U.S.C. § 1985, which imposes liability on those who conspire to deprive others of equal protection of the laws; and (3) 42 U.S.C. § 1986, which imposes liability on anyone who has knowledge of a § 1985 conspiracy, has the power to prevent its implementation, and neglects to do so.

The meat of Hoagland's civil-rights claims are his § 1983 claims, but he is terribly vague as to which of his federal constitutional rights were allegedly violated by Clear Lake. For instance, he asserts that, in bringing the 1999 state-court suit against him, Clear Lake violated his "civil right to be free from capricious, vexatious and/or unwarranted litigation," without citing any constitutional provision or case establishing such a right. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 27.) He also alleges that the 1999 suit deprived him of equal protection under the law, but he does not even begin to explain how this is so.[11] Similarly, he claims that Clear Lake deprived him of equal protection of the law when it used "false representations to extract onerous use restrictions" in the settlement of the 1999 suit, with little further explanation. (*Id.*) Finally, he charges that Clear Lake's enactment of the Ordinances deprived him of both equal protection and "due process" because "they effectively took [his] property rights without reasonable notice and a meaningful opportunity

to be heard."[12] (*Id.* at 28.) Hoagland then claims that, in addition to violating § 1983, each individual defendant either violated § 1985 by conspiring to commit those violations or violated § 1986 by knowing of such conspiracies and failing to prevent their implementation.

Clear Lake responds that whatever form these indeterminate civil-rights claims might eventually take, they cannot succeed because they are barred by the statute of limitations. The statute of limitations used for § 1983 claims is the statute of limitations for personal injury claims in the state where the alleged § 1983 violations took place, *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir.2000), which is two years in Indiana, Ind.Code § 34–11–2–4. The same goes for § 1985 claims, *Wilson v. Giesen*, 956 F.2d 738, 741 n. 4 (7th Cir.1991), and § 1986 contains a one-year statute of limitations, *see* 42 U.S.C. § 1986. Here, Hoagland bases his civil-rights claims on three actions by Clear Lake: (1) the filing of the 1999 state-court suit against him, which occurred on August 12, 1999; (2) the alleged misrepresentations during settlement negotiations, which occurred on April 14, 2000; and (3) the enactment of the Ordinances, which were last substantively amended on April 9, 2001. All three of these events occurred more than two years before Hoagland filed the instant case on June 23, 2003.

Because it therefore appears that the statute of limitations bars all of Hoagland's

---

**11.** Equal protection claims generally involve "charges of singling out members of a vulnerable group," such as a racial minority, or "charges that a law or policy makes irrational distinctions between groups of people." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). There are also "class of one" equal protection claims, where the plaintiff alleges that only he, rather than a group of people, has been singled out for irrational treatment.

*Id.* Hoagland does not even identify one of these theories of equal protection, much less apply one to the facts of his case.

**12.** This sounds like a procedural due process claim, *see, e.g.*, *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010–11 (7th Cir.2002), but Hoagland does not bother to explain further—even though he demands a grant of summary judgment in his favor on this claim.

civil-rights claims as a matter of law, the burden shifts to Hoagland to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To that end, he makes three attempts to get around the statute of limitations, none of which are persuasive.

Hoagland first argues that his claims are saved by the continuing violation doctrine, which "allows a plaintiff to get relief for time-barred acts by linking them with acts within the limitations period." *Shanoff v. Ill. Dept. of Human Serv.*, 258 F.3d 696, 703 (7th Cir.2001). To rely on this doctrine, the plaintiff must show "a continuing violation," which the Seventh Circuit has described as "a continuous series of events giv[ing] rise to a cumulative injury." *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir.2001). Hoagland offers several recent events as evidence of a continuing violation, including: (1) Clear Lake's alleged failure "to honor the Settlement Agreement"; (2) Clear Lake's letter to the FAA, which allegedly contained a false statement and urged the FAA to deny Hoagland a "Public Use Designation"; (3) the parties' recent "motions practice" in the 1999 suit; and (4) the publication of the erroneous Ordinance § 154.045. (*See* Pl.'s Resp. to Def.'s Mot. for Summ J. at 20–21.) However, after recounting these events in detail, Hoagland simply declares that they are "inextricably tied" to the time-barred events underlying his civil-rights claims, with no further explanation and no supporting authority. (*Id.* at 21–22.) He does not explain how these recent events contributed to any "cumulative injury" to his constitutional rights such that the continuing violation doctrine would apply. *Heard*, 253 F.3d at 320. This is not surprising, since (as described above) the alleged constitutional violations underlying his civil-rights claims are so vague as to be inscrutable. In short, Hoagland fails to develop any argument proving a continuing violation of §§ 1983, 1985, and 1986,

and thus he cannot rely on that doctrine to evade the statute of limitations. *Cf. DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp.*, 14 F.3d 1163, 1168 (7th Cir.1994) ("An issue must be pressed, must be argued and supported; a bare conclusion is not enough.").

Hoagland next argues that the "discovery rule" saves his claims from the statute of limitations. This rule "postpones the beginning of the limitations period to the date when the plaintiff discovers or should have discovered that he has been injured." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir.2003). For instance, under the statute of limitations at issue here, a claim accrues "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Martin v. Richey*, 711 N.E.2d 1273, 1279 (Ind.1999). Hoagland claims he did not know that Clear Lake violated his rights until he "learned that there was no Town ordinance in effect at any time from 1997 until 2001 which would actually prohibit the use of [his] . . . helipads." (Pl.'s Resp. at 22.) But Hoagland fails to grapple with the obvious fact that he *could* have discovered the lack of such an ordinance at any time, had he (or his counsel) exercised "ordinary diligence." *Martin*, 711 N.E.2d at 1279. Clear Lake's town council, like every local legislative body in Indiana, is required to record all its ordinances "in a book kept for that purpose." Ind.Code § 36–4–6–17. Moreover, Clear Lake's ordinances are "public records," Ind.Code § 5–14–3–2, so Hoagland (like every other person) has a statutory right to inspect and copy them at any time during business hours, Ind.Code § 5–14–3–3. Hoagland fails to explain why he did not exercise this right; he instead offers the conclusory allegation that he "could not obtain a copy" of the ordinances

until 2003.[13] (Pl.'s Resp. at 22.) This unsupported, undeveloped argument is no reason to postpone the beginning of the limitations period; the discovery rule therefore cannot save Hoagland's claims.[14]

Finally, Hoagland argues that Clear Lake is equitably estopped from invoking the statute of limitations. Equitable estoppel applies where the following elements are present: (1) a misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir.2000). Hoagland claims that this doctrine applies here, largely because Clear Lake allegedly misrepresented "the existence of extant ordinances ... supporting its lawsuit against the Hoaglands." (Pl.'s Resp. at 23.) But equitable estoppel requires *reasonable* reliance on the misrepresentation, *LaBonte*, 233 F.3d at 1053; *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991), which Hoagland cannot show. Quite simply, if a town sues you, and its lawsuit is based on the falsehood that it has an ordinance supporting its position, it is not reasonable to rely on that falsehood when you have a statutory right to inspect the town's ordinances at any time. Ind. Code § 5–14–3–3. Thus, equitable estoppel is inapplicable here.

In sum, Hoagland fails to demonstrate any genuine issue of fact which precludes the statute of limitations from barring his civil-rights claims. Accordingly, Clear Lake is entitled to summary judgment on those claims.

### D. Supplemental Jurisdiction Should Not Be Exercised Over Hoagland's Remaining Claims

Since Hoagland's remaining claims do not arise under federal law, *see* 28 U.S.C. § 1331, and since he does not claim diversity jurisdiction, *see* 28 U.S.C. § 1332, the only possible jurisdictional basis for the remaining claims is supplemental jurisdiction under 28 U.S.C. § 1367. However, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over [supplemental] state-law claims rather than resolving them on the merits." *E.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)). This rule counsels dismissal of Hoagland's state-law claims.

Courts may also decline to exercise supplemental jurisdiction if the supplemental claims raise "novel or complex issue[s] of state law." 28 U.S.C. § 1367(c)(1). Hoagland's supplemental claims certainly fit this description; for example, Hoagland asks this Court to declare that Clear Lake, an Indiana town, has never been "recognized as a legal entity," or in the alternative, determine the town's physical boundaries. (*See* Pl.'s Mem. in Supp. at 20–22.) These provincial issues are best left to the decision of an Indiana state court.

**13.** Hoagland implies that Clear Lake somehow wrongfully withheld the ordinances from him: "[Clear Lake] *never* produced a copy of [its ordinances] at any time before 2003, despite the repeated requests of the Hoaglands' counsel for copies of any ordinances supporting [Clear Lake's] lawsuit against the Hoaglands." (Pl.'s Resp. at 22.) This claim is unsupported by any citation to the record, and thus it is insufficient to show ordinary diligence on Hoagland's part.

**14.** Hoagland also argues that he could not have discovered his alleged injuries until Ordinance § 154.045 was published and/or until Clear Lake failed to abide by the Settlement Agreement, but these arguments are as conclusory and unsupported as the one discussed *supra*.

For both of these reasons, the Court declines to exercise supplemental jurisdiction over Hoagland's remaining claims.

## V. CONCLUSION

For the reasons given above, Clear Lake's motion for summary judgment (Docket # 54) is GRANTED as to Hoagland's claim of federal preemption and all his claims under 42 U.S.C. §§ 1983, 1985, and 1986. The Clerk is directed to enter judgment in favor of Clear Lake and against Hoagland accordingly. Hoagland's claim under the Takings Clause of the Fifth Amendment and all of his state-law claims are DISMISSED for lack of subject matter jurisdiction, and Clear Lake's motion for summary judgment is DENIED as to all of those claims (as it is moot). Hoagland's motion for summary judgment (Docket # 59) is DENIED in full.

A few loose ends remain. Clear Lake's two motions to strike (Docket # 61, 73), its motion for leave to file supplemental affidavits (Docket # 74), and Hoagland's motion to strike (Docket # 68) need not be resolved to decide this case, and thus they are DENIED as moot. Finally, Hoagland's motion for oral argument (Docket # 72) is DENIED, as it is difficult to imagine what the parties could say in person that they were not able to say in the 204 pages of briefs submitted to this Court.